IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 19, 2008

Charles R. Fulbruge III
Clerk

No. 05-41747

MICHAEL STUART DALE

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
For the Eastern District of Texas

Before JONES, Chief Judge, and GARWOOD and SMITH, Circuit Judges.

PER CURIAM:

Michael Stuart Dale, a Texas prisoner, appeals the denial of his petition for a writ of habeas corpus alleging ineffective assistance of counsel at the sentencing phase of his deferred adjudication probation revocation hearing. Because the state courts did not unreasonably apply the Strickland test to the facts in this case, we affirm the district court's judgment.

BACKGROUND

Dale was charged with and tried for aggravated sexual assault in 1997. While the jury was deliberating, he pled guilty to the offense and was sentenced to five years of deferred adjudication probation. During the next 14 months, he violated the terms and conditions of his probation by missing appointments with

his scheduled supervision officer, refusing to submit to electronic monitoring, failing to attend treatment sessions, and failing to perform the required amount of community service. The state moved to enter a final adjudication of his guilt. Dale retained Wayne Ames as counsel for the deferred adjudication probation revocation hearing, during which Dale and his roommate both testified. The court adjudicated Dale guilty and immediately moved to sentencing.

Although Ames was given the opportunity, he called no more witnesses and offered only a three-sentence plea that the court return Dale to probation. The court, however, sentenced Dale to 20 years in prison, the statutory maximum. Dale exhausted his state appellate remedies without success.

Dale then filed a petition for a writ of habeas corpus in Texas court alleging, inter alia, ineffective assistance of counsel at the sentencing phase of his probation revocation hearing. Dale asserted that Ames's failure to introduce available mitigation evidence resulted in a significantly harsher sentence than he would have otherwise received. In support, Dale presented eleven affidavits of family members or friends who stated that they would have testified to his good character had Ames contacted them. The affidavits are nearly identical.[1]

---

[1] Nine affidavits are identical, and the other two are identical to one another. They all contain the same substantive information. The nine identical affidavits state:

> Had I been contacted by Michael's counsel, Mr. Ames, I would have told him that I was ready, willing, and available to testify at Michael's adjudication hearing, in person stating under oath that Michael is someone who should be entitled to another chance on probation or at the very least, something less than a maximum prison sentence, particularly in light of the fact that his probation was revoked for reasons not relating to committing another criminal offense. I would have done what I could to ensure that Judge Tolle saw Michael as someone deserving of some form of leniency, that is, to have humanized Michael in the Judge's eye.

The two affidavits with slightly different wording state:

> Had I been contacted by Michael's counsel, Mr. Ames, I would have informed him that I was ready, willing and able to testify at Michael's adjudication hearing. I would have testified under oath, in person, that Michael

Ames also signed an affidavit admitting that Dale informed him about these witnesses and that his failure to call them was not based on trial strategy.

At a hearing, an experienced local criminal defense attorney testified, based on hypothetical facts resembling Dale's case, that Dale's punishment was excessive and that Ames's failure to investigate and call witnesses and his failure to explore additional punishment options constituted objectively deficient representation. Finally, Ames's sister testified about Ames's deteriorating mental acuity.

The state trial court denied Dale's petition. It found that the substantially identical and conclusory nature of these affidavits detracted from their credibility. In addition, none of the affidavits contained specific facts suggesting how the judge should have found Dale "humanized," nor, according to the state habeas court, did any evidence discuss whether this testimony would have been susceptible to impeachment. The Texas Court of Criminal Appeals affirmed without opinion.

Dale then filed a petition for a writ of habeas corpus in federal court. The district court denied relief, and this Court issued a certificate of appealability.

## STANDARD OF REVIEW

A federal court may not issue a writ of habeas corpus for Dale unless the Texas court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The legal application must be "objectively unreasonable," meaning

---

is someone of good character who deserves another chance at probation or something far less than a maximum prison sentence. Particularly in light of the fact that his probation was revoked for reasons unrelated to the commission of another criminal offense. I would have done my best to ensure that Judge Tolle saw Michael as someone deserving of leniency. Also, I feel my presence would have humanized Michael in the Judge's eye.

more than merely "erroneous or incorrect." Williams v. Taylor, 529 U.S. 362, 409, 411, 120 S. Ct. 1495, 1521 (2000) (internal quotation marks omitted); Tucker v. Johnson, 242 F.3d 617, 620 (5th Cir. 2001). For example, a decision unreasonably applies clearly established law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08, 120 S. Ct. at 1520. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

A state habeas court's findings of facts and its credibility determinations are presumed correct, but may be rebutted by clear and convincing evidence. Summers v. Dretke, 431 F.3d 861, 871-72 (5th Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)). In addition, this Court reviews the district court's findings of fact for clear error and issues of law de novo using the same standards applied below. Barrientes v. Johnson, 221 F.3d 741, 750 (5th Cir. 2000).

## DISCUSSION

Dale's petition claims that the Texas habeas court unreasonably applied clearly established federal law regarding ineffective assistance of counsel. To prove ineffective assistance, a defendant must show that counsel was deficient, and the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Counsel's representation is deficient if it "fell below an objective standard of reasonableness" measured by "prevailing professional norms." Id. at 688, 104 S. Ct. at 2064. "The reviewing court must strongly presume that counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." Pondexter v. Quarterman, 537 F.3d 511, 519 (5th Cir. 2008) (internal quotation marks omitted).

Prejudice "is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. Id. at 693-94, 104 S. Ct. at 2068. In the state sentencing context, the relevant inquiry is whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been "significantly less harsh," Spriggs v. Collins, 993 F.2d 85, 88-89 (5th Cir. 1993), taking into account "such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances." United States v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994) (citing Spriggs, 993 F.2d at 88).[2]

Even assuming arguendo that Ames's performance was deficient, Dale has failed to show that the state courts acted unreasonably in determining that there is no reasonable probability that his sentence would have been significantly less harsh absent Ames's errors.

Some evidence relevant to mitigation was offered during the adjudication phase, which the sentencing judge must have considered. See Pearson v. State, 994 S.W.2d 176, 178 (Tex. 1999). Much of Dale's and his roommate's testimony was directed at Dale's effort to comply with the terms of his probation. Dale testified to his continuing efforts to finish his college degree and to pursue a master's degree in divinity school. His explanation why he fell short of his probation obligations also addresses punishment on resentencing. Dale's

---

[2] The Spriggs "significantly less harsh" standard applies here because Dale's habeas petition alleges ineffective assistance of counsel during a state sentencing hearing, not a federal one. United States v. Grammas, 376 F.3d 433, 438 & n.4 (5th Cir. 2004) (holding that Glover v. United States, 531 U.S. 198, 203, 121 S. Ct. 696, 700 (2001), which cites Spriggs, abrogates the significantly harsh test only in the federal sentencing context).

roommate corroborated his efforts to comply with probation. She testified that she would be willing to help him meet his obligations and that he was a good and reliable friend.

Because this evidence obviously did not sway the court toward leniency, Dale submitted, in habeas proceedings, eleven conclusory affidavits. Each affiant knows Dale and believes him to be "of good character," and each affiant states that he or she would have testified in favor of a reduced sentence. The affidavits do not provide any specific facts describing Dale's good character or good action, nor do the affidavits reveal whether the affiant has had timely, recurring contact with and familiarity with Dale. All of the affiants live in locations far removed from Texas (the closest being in North Carolina). The affidavits offer no facts about his background that would engender sympathy. The Texas habeas court found that such deficiencies undercut the affiants' credibility, a finding Dale fails to rebut with clear and convincing evidence. See Summers v. Dretke, 431 F.3d 861, 871-72 (5th Cir. 2005). When a number of people swear to undifferentiated, verbatim statements, this court justifiably discounts both the statements' veracity and the intensity of the sentiments expressed. See Sawyers v. Collins, 986 F.2d 1493, 1505 & n.20 (5th Cir. 1993). Although the affidavits suggest that some additional mitigating evidence could have been produced on Dale's behalf, they do not create a reasonable probability that a sentencing court would have given Dale a significantly less harsh sentence had it been apprised of this information.

The severity of Dale's sentence is a significant consideration under Spriggs, but our analysis must also account for the sentencing context. Dale pled guilty to aggravated sexual assault, specifically, to sexual penetration of the victim. The revocation court judge presided over the trial and indicated his familiarity with the underlying offense facts. The state showed that in 14 months Dale performed 17 hours of his then-required 140 hours of community

service;[3] failed to report to his supervision officer three times; failed to submit to electronic monitoring; and failed to honor his obligations to participate in a sexual abuse treatment program. Because Dale initially received a light sentence, it seems likely that his failure to honor the lenient terms of probation for a very serious offense influenced the sentencing judge's decision. The sentencing judge did not make a finding on the record during the revocation hearing, but one may infer that Dale's unpersuasive excuses for noncompliance compounded the gravity of the offense. Under all of these circumstances, the vague and conclusory mitigating affidavits do not represent testimony that, if offered, would have led the judge to impose a significantly less harsh sentence. A maximum sentence may seem unduly stringent, but it is not so because Dale received ineffective assistance of counsel.

We affirm the district court's denial of relief because we hold that the state court's ultimate decision, that Dale did not demonstrate a reasonable probability that his sentence would have been significantly less harsh absent counsel's errors, is not an objectively unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

AFFIRMED.

---

[3] By the terms of his probation, Dale was required to complete 240 hours of community service at the rate of 10 hours per month. 14 months into his probation he, therefore, should have completed 140 hours.