# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 3, 2011

No. 09-20639

Lyle W. Cayce
Clerk

MAURICE JABBAR CHARLES,

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR, District
Judge.[*]

EDITH H. JONES, Chief Judge:

Appellant Maurice Charles was sentenced as an adult to extended
imprisonment for crimes he committed while only fourteen years old. He seeks
a writ of habeas corpus to challenge sentences for aggravated robbery and
aggravated kidnapping. The district court denied relief but granted a certificate
of appealability. Charles contends that his attorney ineffectively represented

---

[*] District Judge, Northern District of Texas, sitting by designation.

No. 09-20639

him at trial. Viewed through the discriminating lens of AEDPA deference, we affirm the judgment.

## FACTUAL BACKGROUND

After Charles pled guilty to attempted burglary of a habitation, aggravated robbery, and aggravated kidnapping, his punishment was tried to a jury. The State presented evidence that on October 5, 2000, Charles and an accomplice donned ski masks, armed themselves with a pistol and a shotgun, and attempted to rob a pharmacy before they were thwarted by the armed pharmacist. Undeterred, later that night Charles and a group of men accosted Guillermo Perez and his girlfriend, Viviana Diaz, in a park in Jacinto City, Texas. They beat Perez and Diaz, stole both of their cars, and kidnapped Diaz. The men attempted to rob Diaz of her jewelry. They later beat her, and two of them, including Charles, raped her.

Shortly afterward, a police officer who was investigating the attempted pharmacy robbery observed two men throwing a woman into the trunk of their car. The suspects led the officer on a high speed chase after they saw him. Charles and his accomplices eventually abandoned their cars and fled on foot. Diaz was rescued. Tips led the police to arrest Charles and the others several days later. Diaz became pregnant due to the rape and underwent an abortion.

Charles testified in his own defense, as did twelve character witnesses, some of whom were relatives. Charles testified that, although he did attempt to rob the pharmacy and was remorseful, he was intoxicated from codeine pills and slept in an accomplice's car throughout the robbery of Perez and Diaz, kidnapping, and rape. Charles denied that he had been expelled from school for chasing another student with a knife, walking out of class, and acting

2

No. 09-20639

disrespectfully toward school personnel.  He also insisted that Texas Ranger Andrew Carter and an accomplice, Marcos Ramirez, were lying when each stated that Charles admitted hitting Diaz and said he intended to kill her.

Having been certified for punishment as an adult, Charles was sentenced by the jury to concurrent terms of three years probation for attempted burglary,[1] fifteen years imprisonment for aggravated robbery, and forty years imprisonment for aggravated kidnapping.  His convictions were affirmed on direct appeal by the Fourteenth Court of Appeals of Texas and the Texas Court of Criminal Appeals.

## PROCEDURAL HISTORY

Charles filed a state habeas application challenging the aggravated robbery and aggravated kidnapping sentences because of ineffective assistance of counsel.  The specific claims of ineffectiveness relevant to this appeal are:

1.     Failure to object to the prosecutor's closing argument asking the jury to sentence Charles to forty-eight years imprisonment based on Texas parole law.

2.     Failure to object to Texas Ranger Andrew Carter's testimony that he "felt like he [Charles] was minimizing his role" in the crimes when Carter interviewed Charles.

3.     Failure to object to Ranger Carter's testimony about Charles's unrecorded admission that he hit Viviana Diaz.

4.     Eliciting Charles's direct testimony that he had been expelled from school for fighting, and failure to object to the prosecutor's cross-examination

---

[1]     Charles does not contest, and we therefore do not address, the sentence for attempted burglary.  The attempted burglary occurred two months before the night in question, when Charles broke into the home of his friend's grandmother.  He was apprehended immediately.  *See Charles v. State*, 146 S.W.3d 204, 206 (Tex. Crim. App. 2004).

No. 09-20639

about the school misconduct when the prosecutor based his questions upon school officials' statements.

5.   Failure to object to the prosecutor's question asking what Charles would say if he knew that co-defendant Marcos Ramirez told police Charles intended to kill Diaz.

6.   Failure to object to the prosecutor's closing argument telling the jurors to "think about this. You could be in the same situation as Ms. Diaz. Let me ask you this: Could it be you or your daughter being in the same situation as that girl?"

The state habeas court found that Charles's counsel was constitutionally deficient in one regard—failing to object to improper closing argument about parole law—but it determined that Charles was not prejudiced and thus denied habeas relief. *See In re Charles*, No. 873406-A (262d Dist. Ct., Harris County, Tex. Jul. 31, 2008). The Texas Court of Criminal Appeals affirmed without written order.

Charles then petitioned for federal habeas relief. The federal magistrate judge agreed with the state court's deficiency finding but also found counsel deficient on additional grounds: (1) his failure to object to Ranger Carter's testimony that Charles had minimized his role in the offenses and (2) the prosecutor's questions based upon non-testifying co-defendant Ramirez's statement that Charles intended to kill Diaz. The magistrate judge found no ultimate prejudice to Charles, however, and the district court adopted the magistrate's recommendations to deny relief but also to grant a COA. Charles now appeals.

4

No. 09-20639

## STANDARD OF REVIEW

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Evans v. Cain*, 577 F.3d 620, 622 (5th Cir. 2009) (citations omitted). The standard of review applied by the district court was, correctly, whether the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1)–(2). A state court decision is "contrary" to the Supreme Court's clearly established precedent if it applies a legal rule contradictory to that set forth by the Court or arrives at a result different from the Court's cases on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S. Ct. 1495, 1519 (2000). A state court decision "unreasonably applies" the Supreme Court's clearly established precedent if it correctly identifies the legal rule but applies it in an objectively unreasonable manner to the facts. *Id*. at 407–09, 120 S. Ct. at 1520–21.

The relevant legal rule is the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), which requires a habeas petitioner alleging ineffective counsel to show (1) that counsel's performance was "deficient," meaning he committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the deficient performance "prejudiced" the defense, meaning the "errors were so

5

No. 09-20639

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S. Ct. at 2064. Deficiency is measured by the "reasonableness" of attorney performance under "prevailing professional norms," *id.* at 688, 104 S. Ct. at 2065, and review is accompanied by a strong presumption that counsel's performance was adequate and the product of reasoned trial strategy. *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (citation omitted). Prejudice in the state sentencing context turns on whether, "absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been 'significantly less harsh' . . . ." *Id.* (quoting *Spriggs v. Collins*, 993 F.2d 85, 88–89 (5th Cir. 1993)).

## DISCUSSION

In accordance with the COA, we consider each of Charles's claims of error.

**I.   Failure to Object to Prosecutor's Closing Argument on Texas Parole Law**

In his closing argument, the prosecutor asked the jury to sentence Charles to forty-eight years imprisonment because, under Texas parole law, Charles might serve only half of his sentence and would need to serve 24 years before he turned forty (the age at which the prosecutor believed recidivism unlikely). In Texas, a prosecutor is not authorized to inform the jury during the punishment phase about how parole laws could affect the defendant's time served in prison. *See, e.g.*, *Chester v. State*, 167 S.W.3d 935 (Tex. App. 2005). The state habeas court found Charles's counsel deficient for failing to object, the district court agreed, and the state acknowledges prosecutorial error.

The state court found, however, that defense counsel's failure to object did not prejudice Charles because his sentence was based on the specific facts of his

No. 09-20639

case and was proportionate to the heinous nature of his crimes. The district court found this to be a reasonable application of *Strickland* because (1) Charles's sentences were in the bottom half and fourth of the respective punishment ranges for aggravated kidnapping and aggravated robbery; (2) his sentences were less than the prosecutor urged in the improper parole law argument; and (3) the combination of aggravating and mitigating factors justified the sentences.

The pertinent inquiry is whether the state court reasonably concluded that, absent the prosecutor's improper argument concerning parole law, there was no reasonable probability that Charles's sentences would have been significantly less harsh. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Charles argues that the 40-year sentence was extremely harsh for a juvenile who had no prior record and was eligible for probation. He contends that if the punishment assessed in relationship to the maximum sentence is "all that matters," no petitioner charged with a first degree felony in Texas, which carries a maximum of 99 years or life, will ever be able to show prejudice. Further, because sentences greater than sixty years are treated as 60-year sentences for purposes of calculating parole eligibility, Charles's 40-year kidnapping sentence was just twenty years shy of the effective maximum.

Charles's arguments are unavailing. First, contrary to his claim, a comparison of his sentences to the allowed maximums is not "all that matters." The *Strickland* prejudice inquiry in this context "tak[es] into account 'such factors as . . . the potential minimum and maximum sentences that could have been received, [and] the placement of the actual sentence within the range of

7

potential sentences . . . .'" *Dale*, 553 F.3d at 880 (citations omitted).  Both the state court and the federal district court explicitly considered the aggravating factors present in Charles's vicious crimes.  Moreover, Charles's argument that the 40-year sentence was twenty years less than the maximum sentence permitted in parole calculations in no way establishes that, but for counsel's deficiency, the sentence would have been "significantly less harsh."

Second, the jury was instructed not to consider the effect of parole law on Charles's sentence; Charles presents no reason to overcome the usual presumption that the jury followed the trial court's instructions.  *See Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002).  That the jury did not sentence Charles in accordance with the prosecutor's request of 48 years also supports the conclusion that the jury was not influenced by the improper parole argument.

The state court thus reasonably concluded that there was no reasonable probability that Charles would have received a significantly less harsh sentence had the prosecutor not made an improper parole argument.

## II.     Failure to Object to Testimony that Charles "minimized" his Role

Texas Ranger Andrew Carter, who interviewed Charles during detention, testified that he "felt like [Charles] was minimizing his role" in the crimes.  Charles asserts that this testimony was inadmissible and prejudicial opinion testimony from a law enforcement officer, and that his counsel was deficient in failing to object.

The state habeas court disagreed on the admissibility of this testimony, finding it to represent a permissible lay opinion "since it was (i) rationally based upon Carter's investigation into the offenses, knowledge of the co-defendants' statements, and personal perceptions from his interview with" Charles, and

"(ii) helpful to the jury in determining an issue of fact." Moreover, the habeas court held that in any event, Charles had failed to present any evidence of prejudice suffered from his attorney's failure to object.

The federal district court, however, disagreed as to counsel's deficiency because it disagreed with the state court's interpretation of Texas evidence law. The federal court believed that Texas does not allow evidence of one witness's opinion about the credibility of another witness. *See, e.g.*, *Arzaga v. State*, 86 S.W.3d 767 (Tex. App. 2002).

We reject the district court's conclusion. Because the state determined that Carter's testimony was permissible lay opinion under state evidentiary law notwithstanding his comment on Charles's attitude, a federal habeas court may not conclude otherwise. *See Schaetzle v. Cockrell*, 343 F.3d 440, 448–49 (5th Cir. 2003) ("[W]e defer to [the Texas Court of Criminal Appeals's] determination of state law. 'It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law . . . .'") (citation omitted). *See also Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995) (same); *Moreno v. Estelle*, 717 F.2d 171, 178–79 (5th Cir. 1983) (same). Under § 2254, federal habeas courts sit to review state court misapplications of *federal* law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law.

The Texas Court of Criminal Appeals' failure to explain the reasons for its affirmance does not change the analysis. We have held only that when the state courts fail to address the merits of a *Strickland* deficiency claim by deciding the prejudice prong of the inquiry alone, the federal courts owe no AEDPA deference

on the deficiency prong. *See, e.g.*, *Henderson v. Cockrell*, 333 F.3d 592, 601 (5th Cir. 2003). In *White v. Thaler*, 610 F.3d 890 (5th Cir. 2010), for example, we concluded that the *Strickland* deficiency determination of the Texas Court of Criminal Appeals ("TCCA") did not merit AEDPA deference because the court "*assumed without deciding* that counsel's performance was deficient." 610 F.3d at 899 (emphasis in original). Pursuant to *Henderson*, this court became free of AEDPA deference on the first *Strickland* prong.

The instant case differs from *White*. Here, the state habeas court explicitly concluded that Charles could satisfy neither *Strickland* prong. That is, the state habeas court held Charles's counsel did not perform deficiently, and even if he did, Charles suffered no prejudice. The TCCA affirmed. That is sufficient for AEDPA deference to attach. As we have held previously, it is the state court's "ultimate decision" that is to be tested for unreasonableness. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). Therefore, "the test is whether the state court's decision – that [Charles] did *not* make the *Strickland* showing – was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his" ineffectiveness claim. *Schaetzle*, 343 F.3d at 444 (emphasis in original).[1]

---

[1] *Schaetzle* reviewed a habeas claim for ineffective assistance due to counsel's failure to raise an issue on direct appeal, but contrary to Charles's argument, this court deferred to the state court's interpretation of state law in assessing the conclusion that no prejudice occurred. Charles's reliance upon *Ward v. Dretke*, 420 F.3d 479, 494 (5th Cir. 2005) is also unpersuasive. That court did not, as Charles states, "conclude[ ] that the federal courts were required to conduct an independent analysis of state law because counsel's failure to object to irrelevant and prejudicial evidence at the punishment stage impacted the defendant's federal constitutional right to the effective assistance of counsel." *Ward* examined the requirements of state evidentiary law, but there was no suggestion that the state habeas court had made a contrary ruling on admissibility. The issue upon which the state habeas court and the federal court disagreed was whether allowing the inadmissible evidence was reasonable strategy, an

No. 09-20639

Charles is not entitled to relief based on his counsel's failure to object to Carter's testimony. The testimony was admissible; counsel did not err.

## III.   Failure to Object to Carter's Testimony That Charles Confessed to Hitting Diaz

Carter testified that Charles admitted he hit Diaz.[2]   That admission, however, was not recorded by the interrogation equipment. Charles argues that his counsel was ineffective for failing to object to that testimony. We disagree.

Texas law provides that "[n]o oral . . . statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: (1) an electronic recording . . . is made of the statement . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon 2005). The state court found no deficiency, however, because counsel's decision not to draw undue attention to Carter's statement through an objection was a reasonable strategy. *See Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970) ("Since an objection may tend to emphasize a particular remark to an otherwise oblivious jury, the effect of objection may be more prejudicial than the original remarks of opposing counsel."). The district court noted that while such a strategy may have been unwise, the state court did not unreasonably apply *Strickland* due to the strong presumption in favor of finding reasonable performance and the fact that this aspect of Carter's testimony was very brief.

---

issue pertinent to federal constitutional law alone. *Ward*, 420 F.3d at 492.

[2]   "Q: Who made [Diaz] take off her clothes?  Did he [Charles] say?
   A: Well, in his statement he said 'we'; but he did mention that she was acting dumb; so he hit her.
   Q: Who hit her?
   A: Maurice Charles did."  R. at 164.

11

No. 09-20639

Charles has provided no reason to doubt that conclusion. Charles points out that Carter's testimony may have seemed inconsistent with the defense theory that Charles was a minor player in the crimes, but this argument does not refute counsel's explanation that he preferred not to draw attention to such testimony. Charles contends that counsel's strategy wrongly assumes jurors do not pay attention to all testimony, but this is a dubious proposition at best, and at worst reflects hindsight rather than the conscientious, reasoned effort of trial counsel. Further, Charles misplaces reliance on *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985). *Lyons* stated that "to pass over the admission of prejudicial and clearly inadmissible evidence . . . has no strategic value," but *Lyons* sets forth no constitutional rule that counsel must make, or not overlook, every possible objection to unfavorable testimony. Charles's counsel reasonably explained that Carter's testimony was *not* prejudicial in light of his guilty pleas to two violent crimes and his testimony denying that he hit Diaz. In fact, both Perez and Diaz testified that they were hit by the assailant who fit Charles's description. Finally, the pre-trial motions in limine now urged by Charles were not feasible because counsel could not have anticipated Carter's testimony, and his view that counsel should have objected outside the presence of the jury would also have called undue attention to Carter's testimony.

The state court's conclusion that counsel made a reasonable strategic decision not to object raises no *Strickland* concerns.

## IV.   Ineffectively Handling Testimony on Charles's School Misconduct

Charles argues that his counsel rendered ineffective assistance by (1) eliciting Charles's testimony that he had been kicked out of school; and (2) failing to object to the prosecutor's cross-examination about the school

12

misconduct. The state habeas court, affirmed by the TCCA, concluded under *Strickland* that Charles's counsel was not deficient, and in any case, Charles showed no prejudice. These conclusions were not unreasonable.

1.   Direct Examination

Charles asserts that his attorney was deficient because he elicited Charles's admission that he was expelled from school without any reason to believe that the prosecution would or could offer evidence of the misconduct. Trial counsel's strategy, however, was to portray Charles as a good kid with a nearly blameless past, a strategy that necessarily exposed Charles to cross-examination regarding specific instances of misconduct. Knowing this, counsel reasonably decided to "draw the sting" and appear honest to the jury by asking about the misconduct on direct examination.

Charles's first argument is that, pursuant to Texas Code of Criminal Procedure article 37.07, § 3(g), trial counsel should have requested notice of the state's intent to offer evidence of extraneous bad acts. Failing that, counsel had no reason to expect the prosecutor to present evidence of school misconduct and therefore seriously erred by offering unfavorable evidence from Charles himself. As the district court correctly noted, article 37.07, § 3(g) requires notice only if the state intends to offer extraneous acts evidence in its case-in-chief, not if it does so in cross-examination and rebuttal. *Jaubert v. State*, 74 S.W.3d 1, 2–4 (Tex. Crim. App. 2002).

Moreover, counsel explained that his entire purpose was to show that Charles had never been arrested or convicted before. This was a reasonable strategy, although it required candor about Charles's school record and risked cross-examination about the specific details of his school misconduct. According

No. 09-20639

to counsel's affidavit, Charles led counsel to believe that his only school misconduct was fighting. Apparently, Charles did not reveal the other trouble the prosecutor referred to, such as chasing another student with a knife, showing disrespect to school personnel, and leaving class without permission. The reasonableness of counsel's representation may depend on the information provided by the defendant. *See Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Under these circumstances, the state court did not misapply *Strickland*. In any event, counsel defused the impact of this testimony by pointing out the state's lack of proof of Charles's misconduct as well as Charles's denial of the incidents.

    2. Cross-Examination

Charles argues that, even if counsel's direct examination was not deficient, counsel's failure to object to the prosecution's cross-examination was deficient because the prosecutor asked Charles, "Why would the school tell us they did?" when Charles denied the events the state raised. Charles argues that this statement was hearsay and violated the Confrontation Clause and that the prosecutor could not prove the extraneous acts beyond a reasonable doubt.

Charles's contention fails. Counsel was not deficient for failing to object to a proper question. Otherwise inadmissible hearsay evidence may be offered to impeach the defendant on a topic to which he has opened the door, and no violation of the Confrontation Clause arises. *See Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999); *McClenton v. State*, 167 S.W.3d 86, 94 (Tex. App. 2005).

Finally, even if Charles's counsel should have objected to this cross-examination, Charles suffered no prejudice. Defense counsel argued at closing

14

that the state had presented no evidence of Charles's school misconduct, and the jury was instructed that it could not consider such evidence if not proven beyond a reasonable doubt. Our presumption is that the jury followed this instruction. *See Galvan*, 293 F.3d at 765. The state court did not unreasonably deny habeas relief for counsel's approach to Charles's alleged misconduct in school.

## V.    Failure to Object to Cross-Examination Regarding Ramirez

During cross-examination, the prosecutor asked Charles what he would say if he knew that co-defendant Marcos Ramirez told police Charles intended to kill Viviana Diaz.[3] Charles contends that his attorney's failure to object to this question constituted ineffective assistance of counsel. The state habeas court found that the prosecutor's questions were not improper and that counsel was not ineffective for failing to object. The state habeas court found further that even if counsel had been deficient, Charles demonstrated no prejudice. The federal district court disagreed, however, and held that counsel was deficient in failing to object because the questions contained hearsay under Texas law and violated the Sixth amendment confrontation clause.

In this instance, the district court was wrong. First, the Confrontation Clause does not apply in the context of non-capital sentencing. *See United States v. Fields*, 483 F.3d 313, 332 n.20 (5th Cir. 2007). Second, the state court held that the prosecutor's questions were proper, and the Texas Court of Criminal Appeals affirmed that conclusion. As has been earlier explained, that legal

---

[3] "Q: What would you say, sir, if I told you that Marcos told the police that you were going to kill that girl?
   A: I don't have anything to tell you 'cause I didn't say it.
   Q: So Marcos is lying?
   A: Yes, sir." State Trial R. at Vol. 4, p. 62–63.

No. 09-20639

conclusion of state evidentiary law is entitled to deference.  Charles makes no allegation that the state court unreasonably applied the facts underlying this conclusion.  Thus, the state court did not unreasonably apply *Strickland*'s deficiency prong.

**VI.   Failure to Object to the "Same Situation" Closing Argument**

Charles argues next that his counsel's failure to object to the prosecutor's closing remarks rendered his counsel ineffective.  The prosecutor urged the jury: "[T]hink about this.  You could be in the same situation as Ms. Diaz.  Let me ask you this: Could it be you or your daughter being in the same situation as that girl?"  The state court determined, and the district court agreed, that under Texas law this argument constituted a proper plea for law enforcement and a plea to understand the pain and suffering experienced by the victim, not an improper plea to consider how the victim would want the defendant punished or to punish the defendant as if he had attacked the juror or his family.  *See Torres v. State*, 92 S.W.3d 911, 920 (Tex. App. 2002, pet. ref'd) (approving "I want you to close your eyes and think of how that young man felt."); *Linder v. State*, 828 S.W.2d 290, 302–03 (Tex. App. 1992, pet. ref'd.) (approving "Can you imagine what it was like to be that woman?").  *Cf. Williams v. State*, 732 S.W.2d 762, 765 (Tex. App. 1987, no pet.) (disapproving "Place yourself in the shoes of the victim, the most personal violation of her body.  How would you feel?  What would you want?").

The district court properly deferred to the state court's determination of state law.  The state court's application of *Strickland* was correct.

**VII.   Cumulative Effect of Prejudice**

16

No. 09-20639

Finally, Charles argues that taken together, the alleged errors about which he complains rendered the state court sentencing proceeding invalid. The state habeas court found one instance of ineffective assistance of counsel – the failure to object to the prosecution's mention of Texas parole law – but it concluded that the prejudice from that violation was not sufficient to overcome *Strickland*'s high threshold for reversal. We agree. There are no additional instances of ineffective action by counsel that must be cumulated.

## CONCLUSION

The state habeas court issued a holding as to each *Strickland* prong for all Charles's claims. Those conclusions are entitled to AEDPA deference. Because the state court did not apply *Strickland* in an objectively unreasonable manner, Charles is not entitled to habeas relief. The judgment of the district court is **AFFIRMED.**

17