# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 11, 2012

No. 11-70019

Lyle W. Cayce
Clerk

KIMBERLY LAGAYLE MCCARTHY,

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CV-1631

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

A Texas jury convicted Petitioner Kimberly Lagayle McCarthy of capital murder, and she was sentenced to death. The Texas Court of Criminal Appeals affirmed and denied her subsequent application for habeas corpus. The district court denied her federal habeas petition and declined to grant her a certificate of appealability ("COA"). McCarthy asks this court to grant her a COA on two issues pursuant to 28 U.S.C. § 2253. Because McCarthy cannot make a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-70019

substantial showing of the denial of a federal constitutional right, we DENY a COA.

I

The evidence presented at trial established that McCarthy "entered the home of her 71-year old neighbor Dorothy Booth under the pretense of borrowing some sugar and then 'stabbed Mrs. Booth five times, hit her in the face with a candelabrum, [and] cut off her left ring finger in order to take her diamond ring.'" *McCarthy v. Thaler*, No. 3:07–CV–1631–O, 2011 WL 1754199, at *1 (N.D. Tex. May 9, 2011) (quoting *McCarthy v. State*, No. 74590, 2004 WL 3093230, at *2 (Tex. Crim. App. Sept. 24, 2004)). McCarthy then left with Mrs. Booth's purse and wedding ring. Eventually, she "drove Mrs. Booth's Mercedes Benz to a 'crack house' where she attempted to purchase crack cocaine." *McCarthy*, 2004 WL 3093230, at *2. She later "pawned Mrs. Booth's wedding ring for $200, and used the victim's credit cards at least four times on the day after the murder." *Id.*

McCarthy was originally convicted of the capital murder of Mrs. Booth in 1998. However, the Texas Court of Criminal Appeals ("TCCA") reversed her conviction on direct appeal. *McCarthy v. State*, 65 S.W.3d 47, 49 (Tex. Crim. App. 2001). The TCCA held that the trial court had violated McCarthy's right to counsel under the Fifth and Fourteenth Amendments by admitting into evidence a written statement she made to police after she had unambiguously invoked her right to counsel. *Id.* at 51. Although McCarthy did not admit to physically killing Mrs. Booth in the statement, the TCCA concluded that the statement "was, as the State's attorney so effectively pointed out . . ., powerful enough to establish her guilt of capital murder either as a party or as a

No. 11-70019

conspirator. . . . [and] was also used to paint [her] as an unrepentant liar and set out her cruel and greedy motive for killing her elderly neighbor." *Id.* at 55.[1]

McCarthy was subsequently re-tried. The jury found her guilty of capital murder, and she was sentenced to death. The TCCA upheld her second capital murder conviction on direct appeal, *McCarthy*, 2004 WL 3093230, and the Supreme Court of the United States denied her petition for a writ of certiorari. *McCarthy v. Texas*, 545 U.S. 1117 (2005). McCarthy timely filed a state petition for a writ of habeas corpus. Without holding an evidentiary hearing, the state

---

[1] The written statement reads as follows:

Early Tuesday morning about 1:30 a.m., drugs were delivered to me at my residence by "Kilo" and "J.C.", two guys I met in South Dallas selling drugs, about a month or so ago. Both guys stayed at my residence & partied with me. After my money & the drugs ran out, they asked if I could get some more money. I told them no. They asked me if I knew any of my neighbors I could borrow money from & I said no, not at that hour & that I had to go to work. At that time they began to be verbally abusive & threatening to harm me if I didn't. I called my neighbor "Dorothy Booth". I'm not sure of the time & got no answer. I waited a while & called back, she answered. "Kilo" told me to hang up & I did. He told me to call back & ask her to borrow some sugar or milk instead of money over the phone, because they were going to rob her & take the car. I called back & asked to borrow sugar, she said ok. Kilo & J.C. followed me to her house, when she opened the door & saw me, to let me in they both pushed the door open & knocked her down. I was shoved back outside to her car. The driver side was unlocked & I was told to stay there & lay down in the front seat. Several minutes later they both came out with her car keys, purse, & CD player. Both guys went back into my house & came out with a jam box, cordless phone & caller ID. They told me to drive to Mi Amore motel on second avenue to make a pick up. I was told to park on the next street over & wait for them. After about 3–5 minutes or so I drove off with all the belongings they took & went to Fitzhugh to the dope house. No one answered the door so I went to Perry street dope house. I took everything out of the car & went inside to get dope. They didn't have any so "Smiley" said he would go around the corner & get me some. I gave him the keys & another girl rode with him. They came back & the police stopped them in front of the dope house on Perry street. I went to the back of the house & waited a few minutes & left out the back door to get drugs elsewhere. A few hours later I returned to Perry street dope house & "Smiley" was upset that the cops stopped him. He gave me the car keys back. He asked me if the car was stolen & I said no. He wanted to rent it out for dope so I did & left. After the dope ran out I searched the purse & found a diamond ring & credit cards. I took the ring to the pawn shop & sold it. Later I used the credit card at the grocery store & gas station to purchase cigarettes by the carton for resale at the "boot leg" for cash. I went to a friend's house to smoke dope. He sold the caller ID and cordless phone for dope money. The jambox was sold to an individual at the Mexican dude on Fitzhugh & East Grand. I got a ride with a male & female. We went to several gas stations & she went inside to use the credit cards once or twice.

No. 11-70019

habeas trial court entered findings of fact and conclusions of law recommending that all requested relief be denied. The TCCA denied relief in an unpublished order and adopted all but two of the state trial court's findings and conclusions. *Ex Parte McCarthy*, No. WR-50-360-02, 2007 WL 2660306, at *1 (Tex. Crim. App. Sept. 12, 2007). McCarthy filed a federal habeas petition based on nine grounds. The district court denied relief on all of her claims and declined to grant a COA. *McCarthy*, 2011 WL 1754199. Petitioner appeals, requesting a COA from this court on two of the issues asserted in the district court.

## II

On appeal, McCarthy seeks a COA on two issues raised in the district court. First, she claims that she was denied her right to effective assistance of counsel when her lawyers failed to introduce the written statement she made to police after her arrest as mitigating evidence at the punishment stage of trial. Second, she asserts that she was denied her right to effective assistance of counsel when her lawyers agreed to waive the imposition of Texas Rule of Evidence 614 ("the Rule") with respect to Mrs. Booth's daughter, Donna Aldred.

To obtain a COA, a prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[I]n determining this issue, we 'view[] the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d).'" *Druery v. Thaler*, 647 F.3d 535, 538 (5th Cir. 2011) (quoting *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000)). Under § 2254(d), when reviewing a claim adjudicated on the merits by a state court, we defer to the state court's determination regarding that claim, "unless the decision '[is]

contrary to, or involve[s] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . [is] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Barrientes*, 221 F.3d at 772 (quoting 28 U.S.C. § 2254(d)(1) & (2)).

Because both of McCarthy's claims allege ineffective assistance of counsel, we review her claims under the familiar standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on her ineffective assistance claims, McCarthy "must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and that (2) there is a reasonable probability that prejudice resulted." *Druery*, 647 F.3d at 538 (citing *Bower v. Quarterman*, 497 F.3d 459, 466 (5th Cir. 2007)). In assessing the reasonableness of counsel's representation, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). Further, in order to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'" *Harrington v. Richter*, 131 S. Ct. 770, 778 (2011) (citations omitted); *see Druery*, 647 F.3d at 538–39 ("When our review is governed by AEDPA—as is the case here—our review of the state court's resolution of the

No. 11-70019

ineffective-assistance-of-counsel claim is 'doubly deferential,' since the question is 'whether the state court's application of the *Strickland* standard was unreasonable.'") (citations omitted). Section 2254(d) applies to McCarthy's ineffective assistance claims. Thus, when deciding whether to grant habeas relief on those claims, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788.

Accordingly, to obtain a COA on her ineffective assistance claims, McCarthy must show "that it was 'necessarily unreasonable for the [state court] to conclude: (1) that [s]he had not overcome the strong presumption of competence; and (2) that [s]he had failed to undermine confidence in the jury's sentence of death.'" *Ayestas v. Thaler*, 462 F. App'x 474, 478 (5th Cir. 2012) (quoting *Cullen*, 131 S. Ct. at 1403); *see id.* ("For a COA, we are limited to deciding whether jurists of reason would find the answers to these questions debatable or whether the issues deserve encouragement to proceed.") (citation omitted).

## A

McCarthy first claims that her counsel rendered ineffective assistance under *Strickland* by failing to introduce the written statement she made to police after her arrest as mitigating evidence at the punishment stage of trial. Although she concedes that portions of the statement—even if introduced at punishment—were inculpatory, she argues that the statement also contained mitigating evidence. Specifically, she contends that the statement, *inter alia*, (1) would have provided evidence that she was not the actual killer, even though she was involved in the murder, (2) would have confirmed that the killing was due to her drug addiction, and (3) would have demonstrated her willingness to cooperate in the investigation of Mrs. Booth's murder.

No. 11-70019

The state habeas court rejected McCarthy's claim.  First, it found that the statement would have been inadmissible as a self-serving declaration under Texas law if defense counsel had attempted to introduce it as mitigating evidence at punishment.  *See Allridge v. State*, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988) ("[S]elf-serving declarations of the accused are ordinarily inadmissible in his behalf, unless they come under some exception . . . .") (quoting *Singletary v. State*, 509 S.W.2d 572, 576 (Tex. Crim. App. 1974)).  The state court thereby concluded that McCarthy's counsel had not been deficient for failing to introduce the written statement at punishment because the statement would have been inadmissible if offered.

Further, the state habeas court determined that even if the statement were admissible under state law, the decision of McCarthy's counsel not to introduce it was sound trial strategy.  For instance, the state court found that the statement contained the following aggravating elements if introduced at punishment: (1) the statement was inconsistent with some of the physical evidence produced at trial, (2) portions of the statement were highly improbable, (3) on direct appeal from her first conviction, the TCCA held that the statement was "used to paint appellant as an unrepentant liar and set out her cruel and greedy motive for killing her elderly neighbor," *McCarthy*, 65 S.W.3d at 56, and (4) the statement would have provided the only direct evidence of McCarthy's participation in the offense.  Lastly, the state court found that even if McCarthy could establish that her counsel was constitutionally deficient by not introducing the statement, she had failed to show prejudice from that error, *i.e.*, a reasonable probability that but for her counsel's error, the results of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.

In denying McCarthy's claim for federal habeas relief on this issue, the district court essentially adopted all three of the state habeas court's rationales for denying relief and declined to grant a COA.  *McCarthy*, 2011 WL 1754199,

at *7. We agree with the district court that "'reasonable jurists could [not] debate' whether the . . . petition should have been resolved by the district court in a different manner or 'that [this issue was] adequate to deserve encouragement to proceed further.'" *Druery*, 647 F.3d at 539 (citation omitted).

To establish that her counsel was ineffective, McCarthy must first show that her counsel was deficient. But McCarthy cannot show that reasonable jurists could find debatable the district court's conclusion that it was not "necessarily unreasonable for the [TCCA] to conclude [] that [McCarthy] had not overcome the strong presumption of competence." *Cullen*, 131 S. Ct. 1403.

As an initial matter, for McCarthy's counsel to have been deficient for failing to introduce evidence at trial, the evidence must have been admissible under Texas law. *See Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007) ("For Turner's counsel to be deficient in failing to object, the objection must have merit under Texas law."). Here, the state habeas trial court determined that McCarthy's statement would have been inadmissible under Texas evidentiary law if her counsel had attempted to introduce it as mitigating evidence at punishment, and the TCCA adopted that finding. Accordingly, a federal habeas court cannot overrule that conclusion because "[u]nder § 2254, federal habeas courts sit to review state court misapplications of *federal* law[;] [they] lack[] authority to rule that a state court incorrectly interpreted its own law." *Charles v. Thaler*, 629 F.3d 494, 500–01 (5th Cir. 2011); *see id.* at 500 ("Because the state determined that Carter's testimony was permissible lay opinion under state evidentiary law . . . , a federal habeas court may not conclude otherwise."); *see also Schaetzle v. Cockrell*, 343 F.3d 440, 448–49 (5th Cir. 2003) ("[W]e defer to [the TCCA's] determination of state law. 'It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law . . . .'") (citation omitted). McCarthy's counsel cannot have rendered ineffective assistance by failing to introduce evidence that would not have been

No. 11-70019

admitted. *See Turner*, 481 F.3d at 298 ("Turner's counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless."). Thus, "it is not debatable that the state court's resolution of this issue was not unreasonable," and we deny McCarthy's request for a COA on this issue. *Druery*, 647 F.3d at 540.

Further, even if McCarthy's written statement were admissible under Texas law, it was not unreasonable for the state habeas court to conclude that her counsel's decision not to offer the statement was sound trial strategy. "[T]his Court has repeatedly denied claims of ineffective assistance of counsel for failure to present 'double edged' evidence where counsel has made an informed decision not to present it." *Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003) (citations omitted); *see Boyle v. Johnson*, 93 F.3d 180, 187–88 (5th Cir. 1996) (noting the heavy deference owed trial counsel when they decide as a strategical matter not to introduce evidence of a "double-edged nature," which could harm the defendant's case).

Here, McCarthy's written statement would have been "double-edged" if introduced at punishment, as it contained several aggravating facts and had been effectively used by the State at her first trial as (a) substantive evidence of her guilt and (b) a basis upon which to attack her credibility. For instance, in overturning McCarthy's conviction at the first trial, the TCCA found that during closing arguments in the guilt/innocence phase of the trial "[McCarthy's] inadmissible statement became the rhetorical strawman that the State effectively decimated." *McCarthy*, 65 S.W.3d at 53. Further, although the TCCA found that "[the] statement did not place the murder weapon in [McCarthy's] own hands," the court did conclude that the statement was, as the State "so effectively pointed out . . . , powerful enough to establish her guilt of capital murder either as a party or as a conspirator [and] was also used to paint appellant as an unrepentant liar and set out her cruel and greedy motive for

9

No. 11-70019

killing her elderly neighbor." *Id.* at 56. McCarthy's counsel at the second trial was the same lawyer who represented her at her first trial and had successfully represented her on direct appeal. Thus, counsel was well-aware of the fact that introducing the statement at punishment could have harmed McCarthy's case, and his decision not to do so was therefore necessarily informed. Accordingly, counsel's strategic choice not to introduce the statement at punishment was not objectively unreasonable. *Cullen*, 131 S. Ct. at 1403 ("To overcome th[e] presumption [of adequate assistance], a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'") (citation omitted). It is not debatable that the state court's resolution of this issue was not unreasonable, and we deny a COA on this issue. *Druery*, 647 F.3d at 540.

B

McCarthy also claims that her counsel rendered ineffective assistance under *Strickland* when her lawyers agreed to waive the imposition of Texas Rule of Evidence 614 ("the Rule") with respect to Mrs. Booth's daughter, Donna Aldred.

In Texas, the Rule allows a trial court to exclude certain witnesses from the courtroom upon a motion from either party or upon the court's own motion so that the witnesses "cannot hear the testimony of other witnesses." TEX. R. EVID. 614. However, because Dr. Aldred was Mrs. Booth's daughter, the court could have only ordered her exclusion at McCarthy's request if the court determined that her testimony "would be materially affected if the witness hears other testimony at trial." TEX. CODE CRIM. PROC. art. 36.03(a) (providing for the exclusion of certain witnesses "who for the purposes of the prosecution is a victim, close relative of a deceased victim, or guardian of a victim").[2] If McCarthy's counsel had moved to exclude Dr. Aldred under the Rule and the

---

[2] The trial court also had authority to exclude Dr. Aldred on its own motion in order "to maintain decorum in the courtroom." TEX. CODE CRIM. PROC. art. 36.03(c).

10

State opposed that motion, the court could have required McCarthy "to make an offer of proof to justify the exclusion." *Id.* art. 36.03(b).

Dr. Aldred was the first witness to testify at the guilt/innocence stage of trial; her testimony chiefly entailed identifying her mother's stolen property. Dr. Aldred then took a seat in the gallery and the second witness testified. Next, the third witness, Lieutenant Nolan Smith, began testifying regarding his investigation of the crime. As Lieutenant Smith identified and described several crime scene photographs to the jury, Dr. Aldred became upset, began crying, and left the courtroom. The trial court quickly called a recess and McCarthy's counsel moved for a mistrial. Counsel contended that the jury's observation of Dr. Aldred's emotional reaction to the crime scene photographs was extremely prejudicial to McCarthy's case. The trial court denied a mistrial. Defense counsel then invoked the Rule with regard to Dr. Aldred for all purposes, and the trial court granted that request.

McCarthy contends that her trial counsel's decision to allow Dr. Aldred to remain in the courtroom was objectively unreasonable under *Strickland.* First, McCarthy claims that defense counsel could have excluded Dr. Aldred under the Rule because her testimony could have been affected by hearing the testimony of other witnesses if she had been recalled to testify. McCarthy also claims that her counsel unreasonably failed to request that the trial court admonish Dr. Aldred concerning outbursts during trial. She maintains that no sound trial strategy can justify her counsel's decisions not to (a) object to excepting Dr. Aldred from the Rule or (b) request that the trial court admonish Dr. Aldred about outbursts. Lastly, McCarthy asserts that her counsel's deficiency prejudiced her because it created an unacceptable risk that impermissible factors came into play in the jury's deliberative process.

The state habeas court rejected McCarthy's ineffective assistance claim. First, it concluded that her claim was procedurally barred under Texas law. The

state court determined that McCarthy had expressly limited her claim to matters that were in the record on direct appeal; thus, it concluded that she could have raised those claims on direct appeal, thereby waiving her ability to raise those claims in her petition for habeas relief under Texas law. *See Ex Parte Gardner*, 959 S.W.2d 189, 191 (Tex. Crim. App. 1996) (holding that petitioner waived the ability to raise a claim in his habeas petition, in part, because he made no attempt to raise the claim while his direct appeal was pending, even though he could have raised his claim on direct appeal).

Further, the state habeas court concluded that even if McCarthy's claim was not procedurally barred, she had failed to establish that her counsel's decision to waive the Rule as to Dr. Aldred was defective under *Strickland*. For instance, the state court indicated that excluding Dr. Aldred from the courtroom would not have served the main purpose of the Rule—*i.e.*, preventing her testimony from being materially affected by the testimony of other witnesses. The state court found that the State had only used Dr. Aldred's testimony to identify her mother's stolen property; thus, the court determined that the testimony of other witnesses could not have influenced her testimony because she was the only witness who identified her mother's property. Further, the state court concluded that it was reasonable for defense counsel not to have expected Dr. Aldred to lose her composure at trial. It noted that Dr. Aldred had been in the courtroom during the first trial where she saw the same evidence and did not lose control of her emotions. Thus, the court held that defense counsel's decision reflected sound trial strategy and that counsel's representation of McCarthy was not deficient. Lastly, the court concluded that McCarthy had failed to establish prejudice from Dr. Aldred's presence at trial given the brief nature of her crying, her quick removal from the courtroom, and the fact that the jury heard from ten witnesses after the incident before they deliberated.

No. 11-70019

The district court denied McCarthy's federal habeas petition on this claim, even though the district court rejected the State's argument that the claim was procedurally barred under Texas law. The district court determined that the state court's order denying McCarthy's habeas claim on this issue did not contain an adequate and independent state ground for denying relief. *McCarthy*, 2011 WL 1754199, at *2-3.[3] However, we need not address that issue because we hold that McCarthy cannot show that reasonable jurists could find debatable the district court's conclusion that it was not "necessarily unreasonable for the [TCCA] to conclude [] that [McCarthy] had not overcome the strong presumption of competence." *Cullen*, 131 S. Ct. 1403.

First, it is not clear that Dr. Aldred could have been excluded from the courtroom under the Rule if McCarthy's counsel had moved to exclude her. The state habeas court appeared to find that Dr. Aldred could not have been excluded under the Rule, and it explicitly determined that Dr. Aldred's testimony could not have been influenced by the testimony of other witnesses due to the limited nature of her testimony. *See Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005) ("The purpose of placing witnesses under the rule is to prevent the testimony of one witness from influencing the testimony of another, consciously or not."). The state court also found that McCarthy's counsel had agreed to waive the Rule as to Dr. Aldred in exchange for the State's agreement to allow some of McCarthy's family members to remain in the courtroom—some of whom would later testify at punishment. Accordingly, given the uncertainty regarding

---

[3] The district court based its conclusion that McCarthy's claim was not procedurally barred, in part, on its mistaken finding that the TCCA had rejected the state habeas trial court's conclusion that McCarthy had waived her ability to bring this claim in a habeas petition. *McCarthy*, 2011 WL 1754199, at *2. In fact, the TCCA only declined to adopt the trial court's finding that McCarthy had waived her ability to bring a habeas claim based on defense counsel's decision not to introduce her written statement at punishment; the TCCA adopted the state trial court's conclusion that McCarthy had waived her ability to bring a habeas claim based on Dr. Aldred's presence at trial. *McCarthy*, 2007 WL 2660306, at *1.

whether Dr. Aldred could have been excluded under the Rule, it was not unreasonable for the state court to have determined that it was a reasonable strategical choice for defense counsel to forego attempting to exclude Dr. Aldred under the Rule in exchange for ensuring that McCarthy's family could also remain in the courtroom. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) ("When evaluating an ineffective assistance of counsel claim, we afford counsel the 'strong presumption' that counsel's representation fell within a 'wide range' of 'reasonable professional assistance.'") (quoting *Richter*, 131 S. Ct. at 787).

It was also not necessarily unreasonable for defense counsel to assume that Dr. Aldred would not lose her composure during trial.  Dr. Aldred sat through McCarthy's first trial without incident, presumably including portions of the trial where graphic crime scene photographs were shown to the jury. Further, after Dr. Aldred began crying and the trial court called a recess, defense counsel responded appropriately, moving for a mistrial and then successfully invoking the Rule as to Dr. Aldred for the rest of trial.  Considering all of the circumstances, defense counsel's decisions not to initially invoke the Rule as to Dr. Aldred or to request an admonishment regarding outbursts were not necessarily unreasonable.  *Cullen*, 131 S. Ct. at 1403 ("To overcome [the presumption that counsel made all significant decision in the exercise of reasonable professional judgment], a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'") (citation omitted).  Thus, "it is not debatable that the state court's resolution of this issue was not unreasonable," and we deny a COA.  *Druery*, 647 F.3d at 540; *Turner*, 481 F.3d at 298.

### III

For the reasons stated above, Petitioner's request for a COA is DENIED.