# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2011

Lyle W. Cayce
Clerk

No. 11-10008

STEVEN JEFFREY PAPE,

Petitioner-Appellee

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, GARZA, and SOUTHWICK, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this petition for habeas relief under 28 U.S.C. § 2254, officials with the State of Texas ("State") argue that the district court erred by conducting an evidentiary hearing and by granting habeas relief to Petitioner-Appellee Steven Jeffrey Pape ("Pape"). We agree. For the reasons explained below, we REVERSE the district court and DENY Pape's petition.

I

The State arrested Pape for sexually molesting his daughter and charged him with four counts of aggravated sexual assault of a child younger than fourteen and one count of indecency with a child. Shortly thereafter, Pape was

No. 11-10008

charged in Texas state court with one count of possession of child pornography. Pape's trial counsel moved to sever the trials and Pape's first trial addressed only the indecency and sexual assault charges. Three witnesses testified at trial: 1) Pape's daughter, S.P.; 2) his former wife and S.P.'s mother, A.P.; and, 3) Dr. Jayme Coffman, a physician who had physically examined S.P. in connection with the State's investigation. The case against Pape rested only on testimonial evidence; the State did not present any physical evidence such as blood or DNA samples.

S.P. testified at trial that Pape began sexually molesting her when she was eight or nine years old. S.P. testified that eventually, Pape began having sex with her on a daily basis and that the sexual assaults continued until she "started hanging around her mother a lot." S.P. stated that she waited about two years before she told her mother about the assaults. Once A.P. learned about the incidents she called the authorities and investigators with Child Protective Services (CPS) interviewed S.P. During the interviews, S.P. provided inconsistent accounts of the abuse. Dr. Coffman examined S.P. in connection with the investigation and testified that although S.P. said Pape had raped her, S.P.'s physical examination was normal and her hymen was intact. When A.P. initially testified at trial she discussed her marriage to Pape and how she learned of S.P.'s allegations about the sexual assault. During cross-examination, however, defense counsel significantly expanded the scope of A.P.'s testimony by asking A.P. a series of questions about accusations in which A.P. claimed Pape, neighbors, or acquaintances had tried to physically harm her. Defense counsel also cross-examined A.P. about her allegation that she had once observed Pape inappropriately touching S.P. when the girl was an infant.

The jury convicted Pape on two counts of aggravated sexual assault and a single count of indecency with a child. The jury acquitted Pape on the remaining two counts of aggravated sexual assault of a child. Pape was

sentenced to concurrent terms of forty, fifty, and fifteen years of imprisonment for the three convictions. Pape appealed these convictions and the state appellate court affirmed the trial court's judgment. Subsequently, Pape filed a state application for habeas corpus, which alleged Pape's trial counsel was ineffective because the attorneys had: 1) failed to investigate potential witnesses; 2) failed to use favorable character witnesses during trial; 3) failed to impeach A.P. with expert and lay witnesses whose testimony would discuss A.P.'s credibility and mental health problems; 4) sponsored damaging evidence before the jury; 5) failed to object to inadmissible medical testimony; 6) failed to object to certain evidence and testimony during trial; and, 7) during sentencing, referred to Pape as a "pedophile" and failed to object to testimony that sex offenders cannot be cured.

The state trial court conducted a hearing by affidavit, entered factual findings that refuted Pape's allegations, and concluded that Pape had received effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The Texas Court of Criminal Appeals denied Pape's subsequent appeal. Pape sought federal habeas relief after exhausting his options in state court. A magistrate judge recommended that the district court deny the petition and Pape objected to the magistrate's Report and Recommendation. After reviewing the parties' written arguments, the district court held an evidentiary hearing so Pape could "fully develop his claim that trial counsel rendered ineffective assistance of counsel." The district court heard testimony from Pape's trial and state habeas counsel, and received testimony from at least twelve witnesses via affidavits submitted by Pape. Based on the record and the new evidence elicited during the hearing, the district court granted Pape's petition. The district court concluded that the state Court had unreasonably applied Supreme Court precedent. The district court concluded trial counsel's conduct fell below an objective standard of reasonableness and "amounted to constitutionally

3

ineffective assistance of counsel" because counsel: 1) failed to properly investigate and present character witnesses; 2) injected evidence of Pape's alleged inappropriate touching of his infant daughter, which harmed the defense's case; 3) failed to object to Dr. Coffman's testimony; 4) failed to employ an expert witness to rebut A.P.'s and S.P's testimony; and, 5) failed to discredit certain testimony of A.P. and S.P.  The State appealed the district court's ruling.

II

This appeal involves the review of a state court habeas decision and it is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  We may only grant relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), "or was based on an unreasonable determination of the facts" in light of the state court record.  28 U.S.C. § 2254(d)(2).  Because the present matter involves allegations of ineffective assistance of counsel our analysis centers on § 2254(d)(1).  *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010) ("Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1).").

A state court's decision is contrary to clearly established Supreme Court precedent when it "relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."  *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004).  Under § 2254(d)(1), "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).  An unreasonable application of clearly established federal law "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts" of a case.  *Williams v. Taylor*,

No. 11-10008

529 U.S. 362, 413 (2000). Thus, a state court's application of federal law may be considered reasonable even when the state court has erroneously interpreted or applied Supreme Court precedent.

In reviewing the state court's denial of habeas relief, "we examine factual findings for clear error," and review de novo "questions of law and mixed questions of law and fact." *Gregory*, 601 F.3d at 352. The state court's factual determinations are "presumed to be correct" and the petitioner must rebut this presumption with "clear and convincing evidence." *Wesbrook v. Thaler*, 585 F.3d 245, 251 (5th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

III

The State contends that the district court erred by concluding it was not constrained by 28 U.S.C. § 2254(e)(2) and could conduct an evidentiary hearing to develop the factual basis of Pape's claim. The State also alleges that the district court erred by relying on evidence from this hearing to conclude that Pape's trial counsel had violated Pape's constitutional right to effective representation.

The Supreme Court has recently clarified the evidentiary scope for a reviewing court's habeas analysis under § 2254(d)(1). *See Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). Before *Pinholster*, federal courts generally relied on § 2254(e)(2) to determine whether an evidentiary hearing was appropriate in a habeas case. Section 2254(e)(2) prohibits a district court from holding an evidentiary hearing to develop the factual basis of a claim previously asserted in state court unless a petitioner's claims meets certain exceptions. *Pinholster*, 131 S. Ct. at 1400–01. In *Pinholster*, the Court held that § 2254(e)(2) was not applicable to § 2254(d)(1) petitions such as Pape's. *Id.* at 1398, 1400–01. Instead, the Court analyzed the language of § 2254(d)(1) and held that habeas "review under § 2554(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398. The Court concluded that

§ 2254(d)(1) bars a district court from conducting such an evidentiary hearing because the statute "requires an examination of the state court decision at the time it was made," which limits the record under review to "the record in existence at that same time *i.e.*, the record before the state court." *Id*.

Here, the district court concluded that § 2254(e)(2) allowed for an evidentiary hearing so Pape could "fully develop his claim that trial counsel rendered ineffective assistance." The district court then relied on evidence from that hearing to grant Pape's petition. Under *Pinholster*, however, the district court erred by conducting the evidentiary hearing and by relying on evidence from that hearing to conclude that the state habeas court had unreasonably applied *Strickland*. Pape's federal habeas petition, which alleges ineffective assistance of counsel, must be adjudicated under § 2254(d)(1) and Pape "must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Pinholster,* 131 S. Ct. at 1400.

## IV

Under a de novo standard of review we are free to analyze the state habeas court's ruling ourselves instead of remanding the case to the district court. *Ladd v. Cockrell*, 311 F.3d 349, 357 (5th Cir. 2002). For ineffective assistance of counsel claims, a defendant must meet the standard established in *Strickland* by showing that "counsel's performance was deficient and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish deficient conduct by counsel, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. When evaluating an ineffective assistance of counsel claim, we afford counsel the "strong presumption" that counsel's representation fell within a "wide range" of "reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (internal quotations and citations omitted). Once a defendant proves deficient

conduct by counsel, the defendant must then demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability" requires "a 'substantial' not just a 'conceivable,' likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791). In a habeas case where a defendant alleges ineffective assistance of counsel, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 131 S. Ct. at 785. Under this standard, we afford the state court's analysis "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

Before the state habeas court, Pape argued that his trial counsel had ineffectively represented him. The state habeas court denied the petition, concluding that counsel had not acted deficiently because the acts complained of were the result of a reasonable trial strategy.

A

Pape claims that his trial counsel failed to investigate potential witnesses and were deficient by not having character witnesses testify during trial.

Under the Supreme Court's precedent, "an attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, 'are virtually unchallengeable.'" *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 691). While an attorney must engage in a reasonable amount of pretrial investigation, "the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant and the defendant's own strategic decisions about his representations." *Bryant*, 28 F. 3d at 1415.

No. 11-10008

In state court, Pape submitted affidavits from friends and extended family members who stated that if counsel had tried to contact them before trial, they would have testified about Pape's good character or A.P.'s questionable credibility. Pape's counsel asked him for the names of potential defense witnesses prior to trial. But Pape failed to supply counsel with the names of the witnesses who later stated that they would have testified about A.P.'s credibility and Pape's character. This fact is key to our determination that Pape's failure to investigate claim fails.

In *Bryant*, we considered a similar scenario in which a defense attorney asked his client for the names of alibi witnesses and the client failed to supply the requested information until a hearing that occurred shortly before trial. 28 F.3d at 1415–18. We held that prior to the client's disclosure, counsel's failure to investigate these unknown witnesses "did not amount to ineffective assistance." *Id*. at 1415. Similarly, Pape's trial counsel was unaware of former friends or extended family members who could testify about Pape's character and A.P.'s lack of credibility. Counsel's failure to locate and interview these individuals, therefore, does not constitute ineffective assistance.

Pape's failure to investigate claim fails for a second reason: counsel did not investigate potential character witnesses because testimony about Pape's good character would interfere with counsel's trial strategy and, ultimately, would not benefit Pape. *See Perez v. Texas*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) ("[F]ailure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that . . . appellant would benefit from their testimony." (internal citation and quotation marks omitted)). Pape's attorneys believed that if the jury learned of the pending child pornography charge, jurors would automatically assume that Pape had committed the sexual assault. Pape's attorneys sought to prevent the jury from learning about the pending child pornography charge "at all costs." This strategy limited counsel's options

8

for witnesses because in Texas criminal proceedings, if a defendant creates the impression to jurors that he is a "law abiding" citizen, the State may put forth evidence to rebut this impression. *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). If counsel attempted to portray Pape as an individual with good character, the prosecution could have introduced evidence of the child pornography charge. *See id.* at 704. Placing witnesses on the stand to testify about Pape's character would be inconsistent with counsel's strategy. The state habeas court, therefore, did not unreasonably apply *Strickland* by deciding that counsel had adopted a reasonable trial strategy and had not acted deficiently by not investigating potential character witnesses and by not offering the testimony of character witnesses.

B

Similarly, the state court did not unreasonably apply *Strickland* when that court concluded counsel had not acted deficiently by declining to rely on lay and expert witness testimony to impeach A.P.

Counsel's ability to proffer witness testimony that challenged A.P.'s credibility and truthfulness was limited due to the strategy of preventing the jury from learning about the child pornography charge. Under the Texas Rules of Evidence, evidence of other crimes, wrongs, or acts may be admitted in a sexual assault case to rebut a defendant's theories that accusations against him are false, made in retaliation, or that he is being framed. *Bass v. State*, 270 S.W.3d 557, 562 & n.6, 563 (Tex. Crim. App. 2008); *Powell v. State*, 63 S.W.3d 435, 438–40 (Tex. Crim. App. 2001). The state court determined that under this principle, counsel made a reasonable strategic decision not to impeach A.P.'s credibility with lay witness testimony because such testimony would have permitted prosecutors to introduce evidence of the child pornography charge,

which would be contrary to counsel's overall trial strategy.[1]  *See Bass*, 270 S.W.3d at 562–63.  The state court also concluded that under Texas evidentiary rules, if the defense had allowed an expert witness to testify as to whether A.P. was untruthful, this testimony would allow prosecutors to introduce evidence of the child pornography charge to rebut the theory that A.P. had lied or that A.P. was merely trying to retaliate against Pape.  *Bass*, 270 S.W.3d at 562 & n.6; *Moses v. State*, 105 S.W.3d 622, 626–27 (Tex. Crim. App. 2003).  The state court concluded that counsel had acted reasonably as Texas evidentiary rules and counsel's strategy prevented the defense from proffering an expert witness to rebut A.P.'s testimony.  We defer to the state court's interpretation of Texas law; our function in this habeas proceeding is to analyze whether a state court reasonably applied federal law.  *Charles v. Thaler*, 629 F.3d 494, 500–01 (5th Cir. 2011).  Under federal standards for what constitutes deficient conduct, the state habeas court did not unreasonably apply *Strickland* to determine that counsel had acted reasonably.

C

Pape also asserts that his counsel ineffectively represented him by expanding the scope of A.P.'s testimony to include negative allegations about Pape and other individuals.  In addition, Pape alleges that counsel acted deficiently by failing to object to portions of A.P.'s direct testimony.

During trial, Pape's counsel asked A.P. about a variety allegations she had made in the past, about which the prosecution had not inquired.  This testimony included A.P.'s accusations that Pape had tried to poison her and that various individuals had attempted to harm her physically.  Defense counsel also asked A.P. about her allegation that she had once witnessed Pape inappropriately touching S.P. when the girl was an infant.  Pape's attorneys stated that their

---

[1] Similarly, counsel's tactical decision also eliminated the need for an investigation into possible lay witnesses who could rebut A.P.'s statements.

strategy was to "let everything in" so the jury would become "fatigued" by A.P.'s strange accusations and conclude that A.P. lacked credibility or was mentally ill. Because of this strategy, counsel stated they did not object to A.P.'s various allegations or A.P.'s bolstering of S.P.'s credibility.  Rather, counsel permitted this testimony to go forward, hoping that the jury would hear the various accusations and conclude that A.P. was untruthful and mentally unstable. Similarly, during cross examination, Pape's counsel stated they had questioned A.P. about her various allegations in hopes that the jury would believe she was lying or mentally ill. This line of questioning also introduced evidence against Pape that would otherwise be inadmissible.  Despite this fact, the state court determined that counsel's tactical decisions about A.P.'s testimony constituted a reasonable strategy.

Based on the record before us, the state court did not err by concluding that counsel had not acted deficiently.  In part, this is because a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (internal quotations and citations omitted). That did not occur here as Pape's counsel developed a reasonable trial strategy, vigorously cross-examined witnesses during trial, and made difficult strategic decisions about how best to defend Pape.  In similar cases, we have deferred to counsel's judgment about the presentation and questioning of witnesses when such choices are the result of a "conscious and informed decision on trial tactics." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003) (giving deference to decision not to present two witnesses as part of counsel's decision to pursue a different defense); *see also Green v. Johnson*, 116 F.3d 1115, 1121–23 (5th Cir. 1997) (discussing counsel's decision not to present an expert defense witness after choosing a different course of strategy).  Although one may want to

question some of the tactical decisions made by Pape's counsel, we may not, in hindsight, second-guess counsel's strategy regarding A.P.'s testimony merely because an alternative course of action existed during trial. *Green,* 116 F.3d at 1122. The record contains sufficient evidence to demonstrate that counsel's decisions about A.P.'s testimony resulted from an informed trial strategy and fell within the wide range of trial tactics that constitute reasonable assistance. *Richards*, 566 F.3d at 564. Accordingly, the state court did not unreasonably apply *Strickland* to these claims.

D

Pape alleges that his counsel was deficient because the attorneys failed to object to inadmissible medical testimony during the direct questioning of Dr. Coffman, the state's expert witness. But, this claim, like Pape's other allegations, fails because counsel's acts were the result of a deliberate trial strategy.

We must be highly deferential of counsel's conduct and maintain a strong presumption that counsel's trial strategy fell within the wide range of reasonable professional assistance. *Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992) (internal quotations and citations omitted). Moreover, we have consistently found counsel's decisions regarding examination and presentation of witnesses and testimony to fall within this category of trial strategy which enjoys a strong presumption of effectiveness. *See Johnson v. Dretke*, 394 F.3d 332, 337–38 (5th Cir. 2004) (finding counsel's decision not to investigate and present a witness's testimony to the jury in favor of an alternative defense acceptable despite the fact the alternative defense "was not ultimately prevailing"); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (affirming conviction where the convicted argued counsel failed to attack a prosecution witness's credibility).

No. 11-10008

Counsel sought to attack Dr. Coffman's professional credibility by first allowing her to testify, without objection, as to why she thought S.P. was sexually assaulted. Then, counsel relied on this testimony in questioning her as to how she ultimately reached this conclusion when it was not directly supported with physical evidence as Dr. Coffman had stated that the findings of S.P.'s physical exam did not include direct evidence of trauma and were "normal and consistent" with a medical finding of no sexual abuse. Had counsel objected to Dr. Coffman's initial testimony, it is unclear whether they could have elicited such evidence during cross-examination. Certainly, another attorney may have pursued a different strategic course, but counsel's acts were the result of a trial strategy that fell within the wide range of acceptable conduct. *See Johnson*, 394 F.3d at 337; *Green*, 116 F.3d at 1122. Thus, the state court did not unreasonably conclude that under *Strickland* this claim failed.

E

Pape's final claim is that the state court erred by concluding that counsel had not acted deficiently when counsel referred to Pape as a "pedophile" and did not object to certain testimony during the sentencing portion of trial.[2] We have encountered similar challenges before. In *Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000), the prisoner alleged that his counsel was deficient during the penalty phase of his trial, *id.* at 751. Dowthitt's counsel remarked to the jury that his client, convicted of aggravated sexual assault and capital murder, was "diseas[ed]" which resulted in him acting in "a frenzy, like the feeding of a shark or something." *Id.* This Court held that counsel's statements were part of a reasoned tactical decision and that such strategic decisions should not be second guessed under the teaching of *Strickland*. *See id.* Similarly, Pape's counsel at sentencing was trying to portray Pape as an individual who suffered from a

---

[2] The district court did not consider whether counsel's representation at sentencing was constitutionally deficient. We address this claim as Pape properly preserved it.

13

treatable mental health affliction. Counsel also stated that they made a tactical decision not to object to statements from certain prosecution witnesses because they sought to cross-examine the witnesses and have them admit that sex offenders, while not curable, could be successfully treated. Furthermore, counsel referred to Pape as a "pedophile" in the context of portraying him as someone suffering from a treatable disease. This Court's treatment of *Dowthitt* is analogous to the instant case. The strong presumption that counsel's challenged conduct was the product of reasoned trial strategy is the same at both the guilt-innocence and sentencing phases of criminal trial. *See Wilkerson*, 950 F.2d at 1065. And, we continue to extend highly deferential treatment to counsel's sentencing strategy and tactical decisions. *See, e.g., id.* ("[F]ailure to present mitigating evidence, if based on an informed and reasoned practical judgment, is well within the range of practical choices not to be second-guessed." (citations and internal quotations omitted)); *see also West v. Johnson*, 92 F.3d 1385, 1408–09 (5th Cir. 1996); *Andrews v. Collins*, 21 F.3d 612, 623–25 (5th Cir. 1994); *Stringer v. Jackson*, 862 F.2d 1108, 1116 (5th Cir. 1988), *vacated in part*, 503 U.S. 222 (1992). The state habeas court determined that Pape's counsel's strategy was reasonable and did not constitute ineffective assistance. Based on the record, the state court's determination was "at least minimally consistent with the facts and circumstances of the case." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001) (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)). The state court did not unreasonably apply *Strickland* to determine that this claim failed because counsel's trial strategy fell within an "objective standard of reasonableness." 466 U.S. at 688.

V

Accordingly, we REVERSE the district court's judgment and DENY Pape's petition.