**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 9, 2011

Lyle W. Cayce
Clerk

No. 10-50006

LOUIS DOUGLAS HALLEY, IV,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:06-CV-150

Before JONES, Chief Judge, HAYNES, Circuit Judge, and CRONE, District Judge.[*]

MARCIA A. CRONE, District Judge:[**]

Following his plea of guilty and subsequent punishment hearing, Petitioner-Appellant Louis Douglas Halley, IV ("Halley"), was sentenced to life in prison for murder. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d), alleging that numerous errors by the state trial court tainted his conviction. After the district court denied his petition, this court

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

granted a certificate of appealability ("COA") on whether: (1) the State's introduction of a psychiatrist's testimony during its case-in-chief violated the Fifth Amendment to the United States Constitution; (2) Halley's trial attorneys rendered ineffective assistance by failing to object to the psychiatrist's testimony; and (3) the district court erred in denying Halley's motion for an evidentiary hearing on these issues. For the following reasons, we AFFIRM.

## I. BACKGROUND

Halley pleaded guilty in 2001 to the murder of Johnny Okrasinski ("Okrasinski"). Halley, who was facing five years to life imprisonment, elected to have his punishment assessed by a jury. The evidence before the jury showed that, in the Fall of 1998, Halley became enraged after his coworker, Krista Nagel ("Nagel"), told him she had been drugged and raped by Okrasinski. Nagel subsequently denied making this accusation. Halley's belief that Nagel had been assaulted, however, was bolstered by the statement of another woman, Tiffany Judkins ("Judkins"), who purportedly told him that she, too, had been raped by Okrasinski. Like Nagel, Judkins disputed that she had made such a claim. Thereafter, Halley frequently entreated Nagel to report Okrasinski's behavior to authorities, but Nagel refused, insisting that she had not been raped. Frustrated by Nagel's inaction, Halley told several people that he might harm Okrasinski.

In January 2000, Halley waited outside Okrasinski's workplace and opened fire with a pistol as he approached his vehicle. Okrasinski attempted to take cover behind his van, but Halley climbed atop the vehicle and continued firing. After the victim fell to the ground, Halley shot him two more times. When apprehended later by authorities, Halley claimed that he had killed Okrasinski to prevent him from victimizing other women. Police found the murder weapon in Halley's vehicle and a signed letter of confession on his person. The jury also viewed numerous letters Halley had sent to his friends and family explaining his intention to kill Okrasinski and then commit suicide.

During the State's case-in-chief, the prosecutor called Dr. Ravi Medi ("Medi"), a psychiatrist appointed on the motion of the defense to examine Halley regarding his sanity at the time of the offense and his competency to stand trial. Medi characterized Halley as "uncooperative" and "belligerent" and testified that he was unremorseful for Okrasinski's death. Medi also noted that he had diagnosed Halley with bipolar disorder NOS (not otherwise specified) and "mixed personality disorder with narcissistic and antisocial traits." Medi further opined that mixed personality disorder is "very difficult" to treat.

On cross-examination, defense counsel asked the doctor what treatment Halley would receive in prison, implicitly suggesting that psychiatric treatment would be more "beneficial for [Halley] or for society in the long run" than imprisonment. On redirect, the following exchange occurred:

> Prosecutor: Well, is it typical that someone with the type of condition this Defendant exhibits that they do not want to cooperate in their treatment and they do not want to take the medication?
>
> Medi: It's very common with his condition.
>
> Prosecutor: In fact, it's traditionally cyclic, they will have this condition, they'll seek help temporarily, they'll get some medication, but . . . they'll stop taking medicine, and then they'll act out again, and then they'll wind up back in jail or a hospital . . . and we just see them over and over again coming through the system until we've got something like our victim in this case laying [sic] dead in an alley about four blocks from here, correct?
>
> Medi: Unfortunately, that's true.
>
> Prosecutor: And you have no medical reassurance that there won't be another victim laying [sic] out in that alley in five months if he doesn't go to prison, do you?
>
> Medi: I don't.

On re-cross, defense counsel asked Medi whether he could state "with any medical certainty" that Halley would commit another violent act. Medi answered that it was "possible," but conceded that he did not "know about the future." Similarly, Halley's attorney asked Medi if "it's best to have Mr. Halley incarcerated for the rest of his life," to which Medi replied that it was not his place to decide. The defense did not object to Medi's testimony and, despite the prosecutor's request for a sixty-year prison term, the jury assessed a sentence of life imprisonment.

Halley's conviction and sentence were affirmed on appeal and, in 2003, the Texas Court of Criminal Appeals refused his petition for discretionary review. Thereafter, Halley filed a state habeas application, which was denied by the Texas Court of Criminal Appeals. On December 6, 2006, Halley filed an amended 28 U.S.C. § 2254 petition[1] asserting myriad grounds for relief. The parties consented to proceed before a magistrate judge, who dismissed the petition with prejudice. This court granted Halley a COA with respect to his Fifth Amendment and ineffective assistance of counsel claims, as well as "the denial of an evidentiary hearing on these two claims."

## II. DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this court's review of Halley's claims. *White v. Thaler*, 610 F.3d 890, 898 (5th Cir. 2010). Under the AEDPA, a federal court may not grant habeas relief unless the state court's adjudication of the claim resulted in a decision that (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

---

[1] Halley's original federal habeas petition was dismissed without prejudice for failure to exhaust state court remedies in 2004.

No. 10-50006

A state court's decision is "contrary to" clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if it is "objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc). The state court's factual determinations are presumed correct, and it is the petitioner's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Pape v. Thaler*, 645 F.3d 281, 287 (5th Cir. 2011).

"A state court's determination that a claim lacks merit precludes federal habeas review so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 786 (2011). In other words, under § 2254(d), a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## B. Fifth Amendment

Halley first argues that the state habeas court's denial of his Fifth Amendment claim was contrary to or involved an unreasonable application of clearly established federal law under § 2254(d)(1).[2] Specifically, Halley asserts that the admission of Dr. Medi's testimony, which was the result of an unwarned examination, runs afoul of the Supreme Court's holding in *Estelle v. Smith*, 451

---

[2] Respondent argues that the court need not reach the merits of Halley's Fifth Amendment claim because the state appellate court denied the claim on an independent and adequate state procedural ground. Because the last reasoned state court decision rejected Halley's claim on the merits, however, the procedural default doctrine is inapplicable here. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

U.S. 454 (1981). The state habeas court denied Halley's Fifth Amendment claim on the merits, distinguishing the instant case from *Estelle*.

In *Estelle*, the trial court *sua sponte* ordered an in-custody psychiatric examination to determine the competency of a capital murder defendant, Ernest Benjamin Smith ("Smith"). 451 U.S. at 456-57. Smith was not advised of his *Miranda*[3] rights prior to the examination. *Id*. at 460. During the trial's penalty phase, the psychiatrist testified, over defense counsel's objection, that Smith was a severe sociopath likely to continue to commit criminal acts. *Id*. at 459-60. The jury then answered special questions, including one addressing Smith's future dangerousness, in the affirmative, rendering the death penalty mandatory. *Id*. at 457-60. The Supreme Court held that the admission of the psychiatrist's testimony under these "distinct circumstances," where Smith did not receive *Miranda* warnings and "had neither initiate[d] the psychiatric evaluation nor attempt[ed] to introduce any psychiatric evidence," violated Smith's Fifth Amendment privilege against self-incrimination. *Id*. at 456-69.

Plainly, Halley's case differs from *Estelle* in that it does not involve a capital offense in which the jury must make a special finding regarding future dangerousness. *See Estelle*, 451 U.S. at 466 (limiting its holding to situations where "future dangerousness [is] a critical issue" and "one on which the State ha[s] the burden of proof beyond a reasonable doubt"); *see also Penry v. Johnson* (*Penry II*), 532 U.S. 782, 794 (2001). Instead, Halley's jury was simply tasked with deciding the "appropriate punishment" on the basis of the entirety of the evidence presented. Therefore, the state court reasonably distinguished *Estelle* from the facts presented in the case at bar.

Moreover, two subsequent Supreme Court cases further inform our analysis. In *Buchanan v. Kentucky*, a capital defendant attempted to establish the defense of extreme emotional disturbance by questioning his sole witness,

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

a social worker, about psychological reports detailing his mental condition. 483 U.S. 402, 408-10 (1987). On cross-examination, the prosecutor elicited testimony about the damaging report of a psychiatrist appointed by the court on the joint motion of the parties. *Id*. at 410-11 & n.11. Finding no Fifth Amendment violation, the Court reasoned that *Estelle* "logically leads to another proposition: if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." Thus, because "petitioner's counsel joined in a motion" for the examination and based the defense strategy on the defendant's mental state, there was "no Fifth Amendment privilege against the introduction of this . . . testimony by the prosecution." *Id*. at 422-23.

Similarly, in *Penry II*, the Court held that the introduction of a psychiatrist's report during the prosecutor's cross-examination of a defense witness did not warrant federal habeas relief. 532 U.S. 782, 793-96 (2001). The *Penry II* Court distinguished *Estelle* by noting, *inter alia*, that the defendant (1) requested a mental examination and (2) was not yet facing the death penalty at the time of his examination and, thus, future dangerousness was not specifically at issue. *Id*. at 794.

In light of *Buchanan* and *Penry II*, this court cannot conclude that the Texas state court's denial of Halley's Fifth Amendment claim was contrary to, or an unreasonable application of, "clearly established federal law, as established by the Supreme Court." 28 U.S.C. § 2254(d)(1). Importantly, because Halley was not charged with capital murder and he moved for a psychiatric evaluation,

*Estelle* is not controlling.[4]  For these reasons, Halley's case is distinguishable from *Estelle*, which was expressly limited to its facts.  451 U.S. at 466.

Furthermore, any error that may have occurred is harmless.  It is well established that habeas petitioners are not entitled to relief based on a constitutional error unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Oliver v. Quarterman*, 541 F.3d 329, 341 (5th Cir. 2008).  This court has previously found equivocal psychiatric testimony, like Medi's, to be harmless.  *See Woods v. Johnson*, 75 F.3d 1017, 1027 (5th Cir. 1996) (holding inadmissible psychiatric testimony harmless where witness was unable to say with any degree of certainty how defendant would behave in the future).  Moreover, there was ample evidence before the jury to justify Halley's lengthy sentence.  Testimony established that Halley obsessed over Okrasinski's treatment of women, extensively plotted his murder, waited outside his workplace, and shot him multiple times as he attempted to seek cover.  *See Dale v. Quarterman*, 553 F.3d 876, 881 (5th Cir. 2008).  In addition, jurors, who viewed letters sent by Halley to his family and friends rationalizing Okrasinski's murder and heard Halley's testimony, may have viewed him as unremorseful without regard to Medi's testimony.  Accordingly, even if the admission of Medi's testimony constituted a Fifth Amendment violation, Halley would not be entitled to habeas corpus relief.  *Oliver*, 541 F.3d at 341.

## C.  Ineffective Assistance of Counsel

Halley next asserts that his trial counsel was ineffective for failing to object to Medi's testimony.[5]  Because a § 2254 claim of ineffective assistance of

---

[4] This court has previously held that the necessity for *Miranda* warnings is not obviated where the defense requests a mental evaluation on the issue of competency. *Battie v. Estelle*, 655 F.2d 692, 702 (5th Cir. 1981); *see also Vanderbilt v. Collins*, 994 F.2d 189, 196-97 (5th Cir. 1993).  Our inquiry here, however, is concerned only with clearly established federal law "as determined by the Supreme Court" and not with our own precedent.  28 U.S.C. § 2254(d)(1); *accord Renico v. Lett*, __ U.S. __, __, 130 S. Ct. 1855, 1866 (2010).

[5] Halley also argued below that Medi's testimony was inadmissible under Article 38.22 of the Texas Rules of Criminal Procedure. This assertion, however, has been waived, as Halley did not address it in his briefing.  *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

counsel is a mixed question of law and fact, this court reviews the lower court's denial of such a claim *de novo*. *See Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008). To prevail on his claim of ineffective assistance, Halley must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, Halley must show that his counsel's actions "fell below an objective standard of reasonableness." *Id.* at 688. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* at 689. Under *Strickland*'s prejudice prong, Halley additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability requires a substantial, not just a conceivable, likelihood of a different result." *Pape*, 645 F.3d at 288. Conclusory assertions of prejudice are insufficient. *Green v. Johnson*, 160 F.3d 1029, 1041 (5th Cir. 1998).

In a habeas case where a defendant alleges ineffective assistance of counsel, the 'pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Pape*, 645 F.3d at 288 (citing *Harrington*, 131 S. Ct. at 785). In conducting habeas review, the state court is granted a "deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.

In the instant case, the state habeas trial court denied Halley's ineffective assistance claim in light of its rejection of his substantive argument that Medi's testimony violated his Fifth Amendment rights. This is not an unreasonable application of *Strickland*, as the failure to "raise meritless objections is not ineffective lawyering." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Moreover, this court has "consistently found counsel's decisions regarding

examination and presentation of witnesses and testimony to fall within [the] category of trial strategy which enjoys a strong presumption of effectiveness." *Pape*, 645 F.3d at 291. Here, counsel allowed Medi to testify, without objection, as to Halley's unstable mental condition. Then, counsel relied on that testimony to question Medi regarding whether Halley would receive sufficient treatment in prison as opposed to a psychiatric hospital. Counsel also recalled Medi's equivocal testimony in closing arguments to suggest to the jury that Halley would not again pose a threat. Thus, the record evidence supports a finding that counsel's decisions fell within the "wide range of trial tactics that constitute reasonable assistance." *Id.*; *see also Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999) (recognizing the great deference afforded to counsel where evidence of a "double-edged nature" is involved).

In any event, Halley has failed to establish prejudice. With respect to a state sentencing, the question is whether, "absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been significantly less harsh." *Dale*, 553 F.3d at 880. Halley does not make such a showing. Specifically, aside from Medi's testimony, compelling evidence was presented to warrant Halley's life sentence. As noted above, the jury considered evidence of Halley's obsessive nature, extensive premeditation, and callous attitude toward his victim. *See White v. Johnson*, 153 F.3d 197, 203 (5th Cir. 1998) (characterizing "statements by the defendant indicating a lack of remorse" as "nonpsychiatric evidence of future dangerousness").[6] In short, while the jury assessed a sentence in excess of the sixty years sought by the prosecutor, sufficient evidence was presented at sentencing, exclusive of Medi's testimony, to demonstrate aggravating circumstances supporting a life sentence. Moreover, Halley provided only conclusory allegations of prejudice in his briefing. *Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008) (denying prisoner's habeas petition

---

[6] For further discussion of the details of Halley's offense, *see Halley v. State*, No. 08-01-00088-CR, 2002 WL 1584198, at *1 (Tex. App.—El Paso July 18, 2002).

that included mere conclusory assertions of prejudice).    Because Halley's ineffective assistance claim lacks merit, the state court did not unreasonably apply *Strickland.*

## D.  Evidentiary Hearing

Finally, Halley argues that the district court improperly denied an evidentiary hearing on his Fifth Amendment and ineffective assistance of counsel claims.  This claim is foreclosed, however, by the Supreme Court's holding in *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011), which limits habeas review of claims adjudicated on the merits in state court to the state court record.  Accordingly, we affirm the district court's denial of an evidentiary hearing.

## III.  CONCLUSION

Consistent with the foregoing analysis, the district court's denial of habeas corpus relief is AFFIRMED.