

# NUMBER 13-13-00014-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

---

**JUAN GARCIA,**                                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                        **Appellee.**

---

### On appeal from the 130th District Court
### of Matagorda County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Juan Garcia appeals his conviction for the offense of aggravated sexual assault, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021 (West, Westlaw through 2013 3d C.S.). A jury found appellant guilty and assessed punishment at ninety-nine years' confinement in the Texas Department of Corrections, Institutional Division. By four issues, which we construe as one, appellant contends that he was denied effective

assistance of counsel.  Specifically, appellant asserts that his counsel failed to:  (1) conduct a reasonable investigation and call witnesses during the trial and punishment phases; (2) consult with an expert witness or review scientific literature concerning false allegations of sexual abuse; (3) effectively cross-examine the State's witnesses; and (4) object or seek a continuance when the State called an undesignated witness during the punishment phase.  We affirm.

## I.  BACKGROUND

Appellant's stepdaughter, G.D., alleged that appellant sexually assaulted her.[1] During the guilt/innocence phase of the trial, G.D. testified that appellant committed numerous inappropriate acts towards her, beginning when she was eight years old.  The inappropriate acts included:  suggesting she try on a pair of women's underwear in a store while her mother was in another changing room; masturbating at the foot of her bed; lying nude in her bed next to her while she pretended to sleep; touching her inappropriately; and penetrating her vagina with his fingers.[2]  Appellant's counsel cross-examined the State's witnesses, but did not cross-examine G.D.   Appellant did not testify and did not call any defense witnesses during this phase of the trial.

During the punishment phase, the State called B.R., A.L., T.S., and R.T. to testify. These women recounted an incident that occurred with appellant, approximately six years before appellant began molesting G.D.  According to all four witnesses, they were

---

[1] G.D. was an adult at the time of trial. She testified that the sexual abuse happened approximately ten years earlier.

[2] The State presented four witnesses during the guilt/innocence phase of the trial:  G.D., her father, her mother, and Sergeant Charlotte Brown.

2

playing outside when appellant got their attention by knocking on a window. Through the window, they saw that appellant was naked and masturbating. They each testified that appellant pleaded guilty to indecency and that he received deferred adjudication. In addition, A.C., a childhood friend of one of appellant's daughters, testified that appellant touched her "in her private parts" at a sleepover when she was eleven years old. A.C. also testified that on one occasion, she saw appellant standing naked and masturbating at a window while she was playing outside. Defense counsel did not cross-examine the State's witnesses and did not present any witnesses during the punishment phase of trial.

Appellant filed a motion for new trial. During the hearing on appellant's motion, five of appellant's daughters stated that, had they testified at their father's trial, they generally would have had favorable things to say about appellant. They also testified that appellant's defense counsel did not interview them prior to trial.

Defense counsel testified at the hearing that his trial strategy was to show that G.D.'s delayed accusations of sexual abuse were an attempt by G.D.'s mother to gain an advantage over appellant in their divorce proceedings. Defense counsel stated that he did not need to call any witnesses because he was able to pursue this strategy through cross-examination. He also said that he did not need an expert witness because the defensive theory was relatively simple. When questioned about his strategy regarding punishment, he explained that he did not question or present any witnesses because it would have made "a bad situation worse." One of his investigators informed him that appellant's daughters had played with the girls involved in appellant's indecency case.

3

Defense counsel feared that using appellant's daughters as witnesses would have opened the door to damaging cross-examination about the incident.

Appellant introduced into evidence at the new trial hearing, an affidavit from Jerome Brown, Ph.D., in which he attested that CPS records and therapy records of G.D. could have been reviewed to determine whether proper methods were utilized; that G.D.'s therapy attendance could have suggested low motivation in treatment, which would be inconsistent with having been sexually abused; and that, based upon the divorce of appellant and his wife, there was an increased probability of false allegations. Brown averred that an expert could have helped develop a line of questioning, and suggested several books that could have been used to prepare defense counsel. The trial court denied appellant's motion for new trial.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

To prevail on an ineffective assistance of counsel claim, the defendant must show: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). Our review of the counsel's representation is highly deferential; we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *Jaynes*, 216 S.W.3d at 851. The record must contain evidence of the counsel's reasoning, or lack thereof, to rebut the presumption. *Moreno*

4

*v. State*, 1 S.W.3d 846, 865 (Tex. App.—Corpus Christi 1999, pet. ref'd). We review the totality of representation rather than isolated instances in determining whether trial counsel was ineffective. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Lopez*, 343 S.W.3d at 143.

When, as here, ineffective assistance was first urged in a motion for new trial, we review the two *Strickland* prongs through the prism of the abuse of discretion standard. *See Cueva v. State*, 339 S.W.3d 839, 857 (Tex. App.—Corpus Christi 2011, pet. denied); *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd). A trial court abuses its discretion when no reasonable review of the record could support the trial court's ruling. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012).

### III. DISCUSSION

#### A. Case Investigation

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691. To establish an ineffective assistance claim for failure to investigate, a defendant must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Appellant asserts that defense counsel's performance was inadequate because he allegedly failed to speak with appellant's daughters. Appellant argues that because of his failure, defense counsel did not know that the daughters could have provided testimony that G.D. fabricated her allegations.

5

Although appellant argues that an "investigation could result in a defense of fabrication, retaliation, or allegations resulting from parental alienation," the record does not support these claims. Defense counsel's investigator informed him that appellant's daughters had played with the girls involved in appellant's indecency case. In addition, during the hearing on appellant's motion for new trial, appellant's daughters all testified that G.D. did not have a good relationship with appellant and that appellant was a good father. However, none of the daughters testified about appellant's sexual abuse charges or that G.D. was untruthful regarding her allegations. Although appellant's daughters allege there is animosity among appellant, G.D., and G.D.'s mother specifically relating to appellant's divorce, such allegations do not impeach G.D.'s veracity. Appellant fails to show what further investigation would have revealed and how it would have helped him. *See id.*

**B.     Defense Witnesses**

Appellant argues that his daughters and ex-spouse should have been called as character witnesses during the punishment phase. Appellant claims that the witnesses would have testified regarding mitigating factors for the jury to consider and that there is a reasonable probability that the jury's assessment of punishment would have been less severe had the witnesses testified.

Defense counsel testified that calling appellant's family members would have invited harmful cross-examination. Anticipating that the State would use the family members to highlight the 1995 indecency case, defense counsel made a legitimate trial strategy decision to not put the daughters on the stand. *See Ex parte McFarland*, 163

6

S.W.3d 743, 757 (Tex. Crim. App. 2005) (explaining that even though possible witness testimony may have been beneficial to defense, it was a legitimate strategic decision not to call witness because State would have cross-examined witness about prior robberies committed by defendant); *Milburn v. State*, 15 S.W.3d 267 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (setting out that counsel can only make a reasonable decision to forego presentation of mitigating evidence after evaluating available testimony and determining it would not be helpful); *see also Thomas v. State*, No. 06-01-00021-CR, 2002 WL 171598, at *8 (Tex. App.—Texarkana, Feb. 5, 2002, no pet.) (not designated for publication) ("It is a legitimate strategy for counsel not to put even favorable witnesses on the stand where there is a risk of opening the door to unfavorable testimony on cross-examination."). Accordingly, because placing the daughters on the stand could have potentially opened the door to testimony that could harm appellant, we hold defense counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 699–700.

Appellant relies on *Milburn*, 15 S.W.3d at 270, for the proposition that the failure to put on available witnesses constitutes ineffective assistance of counsel. Appellant's reading of *Milburn* is unpersuasive. In *Milburn*, trial counsel failed to investigate, evaluate, or submit any character testimony in spite of the fact at least twenty people were available to testify on defendant's behalf. *Id.* at 269–70. *Milburn* emphasizes the importance of presenting helpful witnesses and evidence, but also recognizes that defense counsel may "forego presentation of mitigating evidence after evaluating available testimony and determining that it would not be helpful." *Id.* at 270.

7

## C.    Expert Witness

Appellant argues that trial counsel did not have an expert witness strategy and that an expert was necessary to counter Sergeant Charlotte Brown's testimony that G.D. had not been manipulated into making an accusation against appellant.[3]   An error in trial strategy will only be considered inadequate representation if counsel's actions are without a plausible basis.   *See Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). During the motion for new trial hearing, appellant asked defense counsel about retaining an expert witnesses:

| [Appellant Counsel]: | Okay. What was your trial strategy not getting an expert witness in this case, an expert witness who is trained in child sex abuse cases, a psychologist, who could—in fact, a mental health professional with special expertise in treatment and evaluation of sex abuse allegations? What was your trial strategy in not getting an expert to look at the therapy records? |
| --- | --- |
| [Defense Counsel]: | I did not have a trial strategy in regard to that. As I said, my core strategy was the fact that G.D. loathed [appellant] for many reasons. |

From defense counsel's answer, appellant reasons that defense counsel had no trial strategy regarding an expert witness.   Appellant claims Dr. Brown could have testified regarding a pattern of behavior called "sex abuse in divorce syndrome."   Further, appellant asserts that expert review of the complainant's therapy records could have indicated that complainant's behavior was inconsistent with having been sexually abused.

During the hearing, defense counsel explained his trial strategy, as follows:

My trial strategy was that these accusations which were over 12 years old only came to light based upon a knock-down drag-out divorce

---

[3] Sergeant Brown investigated G.D.'s allegations against appellant.

between my client and his wife, and that's when the first real outcry emanated.

. . . .

I think the fact that people often make allegations of sexual abuse during a divorce is certainly something of common knowledge. I don't think you need an expert to tell that to a jury or anybody else.

Defense counsel stated he executed his trial strategy effectively through cross-examination of the State's witnesses.

The record reflects that defense counsel's strategy, like Dr. Brown's proposed strategy, was to characterize the sexual abuse accusations as an attempt by appellant's wife to gain an advantage over appellant in the divorce proceedings. Defense counsel concluded, however, that he did not need an expert witness to advance this argument. Though defense counsel admitted that an expert witness may have helped him develop a line of questioning for the complainant to show inconsistencies in her behavior, a defendant's constitutional right to counsel does not mean errorless counsel. *See Howell v. State*, 563 S.W.2d 933 (Tex. Crim. App. 1978). This reasoning, supplemented by the strong presumption that a counsel's actions fall within the wide range of reasonable professional assistance, leads us to conclude that his actions were both plausible and within the range of acceptable professional assistance. *See State v. Morales*, 253 S.W.3d 686, 698 (Tex. Crim. App. 2008) (quoting *Strickland*, 466 U.S. at 687, 689 (1984)).

Appellant relies on *Ex parte Briggs, Wright v. State,* and *Ex parte Ard* to support his argument that the failure to present expert testimony constitutes ineffective assistance of counsel. *See Ex parte Briggs*, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005); *Wright v. State*, 223 S.W.3d 36 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Ex parte Ard,*

9

No. AP-75704, 2009 WL 618982 at *2, (Tex. Crim. App. 2009) (mem. op., not designated for publication).[4] Each case is factually distinguishable. Unlike trial counsel in *Briggs, Wright*, and *Ard*, defense counsel explained his legitimate strategic reasons for his actions that were not based on timing or financial constraints. In *Briggs*, the decision not to produce expert witnesses was based on a financial decision, not a strategic one. *See Briggs,* 187 S.W.3d at 457. In *Wright*, trial counsel did not hire an expert because (1) he was told that any expert he hired would not be able to interview the complainant, and (2) by the time he had received the investigator's notes he did not have time to contact an expert. *See Wright*, 223 S.W.3d at 43. In *Ard*, the Texas Court of Criminal Appeals based its reversal on a difference between the expert's testimony at trial and at the writ hearing that could not be explained or justified by trial strategy. *See Ard*, 2009 WL 618982, at *5.

In sum, we conclude that trial counsel's decision not to present expert testimony does not constitute ineffective assistance.

**D.    Scientific Literature**

Appellant also argues that trial counsel's performance was deficient because he did not fully investigate existing scientific literature. During the motion for new trial, appellant questioned defense counsel on his familiarity with scientific evidence in sexual abuse cases as follows:

> [Appellant Counsel]:      Okay. Have you ever used an expert in a child sexual abuse case or aggravated sex assault case?

---

[4] Unpublished opinions have no precedential value and must not be cited as authority by counsel or by a court. TEX. R. APP. P. 77.3.

| | |
|---|---|
| [Defense Counsel]: | Yes, sir, I believe I have. |
| [Appellant Counsel]: | Have you read any books on child abuse in preparing for cross-examination of complaining witnesses? |
| [Defense Counsel]: | Well, I've certainly read and kept up with case law, and I have read some treatises. |

Contrary to appellant's assertion, the record does not support the argument that defense counsel failed to research scientific literature, that defense counsel was unaware of the literature, or that defense counsel's representation was constitutionally deficient because he failed to review any scientific literature concerning false allegations. Defense counsel's familiarity with scientific literature falls within the wide range of reasonable professional assistance.

**E.     Cross-Examination of the State's Witnesses**

Appellant argues his defense counsel should have cross-examined:   (1) Sergeant Brown about a 2003 visit by G.D. and her father to the sheriff's office; (2) G.D.'s father about potential past abuse; (3) Captain Susan Maxwell[5] of the Matagorda County Sheriff's Department about a February 14, 2003 sheriff's report and whether or not she visited G.D.'s school; (4) G.D.'s mother about CPS allegations of abuse made on a regular basis; and (5) G.D. regarding her inconsistent statements.

Again, appellant has failed to rebut the presumption that his counsel's cross-examination fell within the wide range of reasonable professional assistance.   *Resendiz v. State*, 112 S.W.3d 541, 548 (Tex. Crim. App. 2003) ("noting that a suggestion that cross-examination should have been conducted in another manner does not rebut

---

[5] Captain Maxwell did not testify in this case.

11

presumption that counsel's conduct fell within wide range of reasonable professional assistance"). It is frequently a sound trial strategy not to attack a sympathetic eyewitness without very strong impeachment. *Ex parte McFarland*, 163 S.W.3d at 756.

Cross-examination is an art, not a science, and it cannot be adequately judged in hindsight. *Ex parte McFarland*, 163 S.W.3d at 756. While appellant has suggested that certain points in cross-examination could have been done differently, "isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 785 S.W.2d 391, 293 (Tex. Crim. App. 1990) (en banc); *see Lopez*, 343 S.W.3d at 143 (holding that an appellate court looks to totality of representation). We hold that defense counsel's cross-examination constituted reasonable professional assistance.

## F.    Objecting to Punishment Phase Witness and Filing a Motion for Continuance

Appellant complains that, during the punishment phase, defense counsel failed to object to the State's undesignated witness, A.C., and failed to move for a continuance to investigate A.C. in light of anticipated testimony. Appellant relies on defense counsel's admission during the hearing that, in hindsight, it may have been a mistake to not object or to ask for a continuance and that A.C.'s testimony may have contributed to appellant's sentence.

Despite defense counsel's candid reflection, we assess counsel's performance without the benefit of hindsight. *See Strickland*, 466 U.S. at 669 (explaining that a fair assessment of attorney performance requires that every effort be made to eliminate

12

distorting effects of hindsight, to reconstruct circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time of trial); *see also Ex parte Welborn*, 785 S.W.2d at 393. When claiming ineffective assistance for failing to object, a party must demonstrate that if trial counsel had objected, the trial judge would have committed error in refusing to sustain the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (en banc). In *Hollowell v. State*, the Texas Court of Criminal Appeals held that evidence willfully withheld from disclosure under a discovery order should be excluded from evidence. *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978). The sanction of exclusion, however, should not be imposed absent bad faith or willfulness on the part of the prosecution. *Peña v. State,* 864 S.W.2d 147, 149 (Tex. App.—Waco 1993, no pet.).

The record is devoid of any evidence that would show that the State willfully or knowingly failed to timely disclose A.C.'s testimony. Appellant has not provided any evidence that the State knew of A.C. before she submitted her statement to police or that the State deliberately withheld the disclosure of A.C. as a witness. Therefore, we are unable to conclude that the trial court would have abused its discretion by overruling an objection to A.C.'s testimony. *See Vaughn*, 931 S.W.2d at 566 (requiring proof of prosecutorial bad faith in withholding a witness's information).

When viewed in light of *Strickland*, appellant's claim that he was denied effective assistance of counsel based on counsel's failure to ask for a continuance to investigate A.C. also fails. *See Strickland*, 466 U.S. at 691. Even assuming the failure was deficient performance, appellant fails to put forth any evidence that defense counsel's

13

decision not to ask for a continuance prejudiced or harmed his defense. *See id.* (holding that to prevail on ineffective assistance of counsel claim, appellant must show deficient performance prejudiced defense). As previously discussed, appellant must specifically show what further investigation would uncover and how it would help the defense. *See Green*, 882 F.2d 999, 1003. Appellant has done neither. The record fails to show how defense counsel's failure to request a continuance during punishment prejudiced appellant's defense. *See Strickland*, 466 U.S. at 691.

## G. Summary

Appellant has failed to show that his attorney's performance fell below an objective standard of reasonableness or that the outcome of trial would have been different but for his trial counsel's alleged mistakes. *See id.*, 466 U.S. at 687–691. Because the record supports the trial court's ruling, we find that the trial court did not abuse its discretion in denying appellant's motion for new trial.[6] *See Cueva*, 339 S.W.3d at 878.

## IV. CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of December, 2014.

---

[6] Appellant claims that *S.J.P. v. Thaler*, No. 4:09–CV–112–A, 2010 WL 5094307 (N.D. Tex. Dec. 3, 2010) compels reversal in this case. Appellant argues that *S.J.P.* is factually similar to the present case and because the district court in *S.J.P.* ruled that the defendant received ineffective assistance of counsel, we must do the same in appellant's case. We disagree, noting that district court's ruling in *S.J.P.* was reversed by *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).

14